**LA PLAYA SANTA MARINA, INC.,**
Plaintiff, Appellee,

v.

**The CHRIS–CRAFT CORPORATION,**
Defendant, Appellant.

**LA PLAYA SANTA MARINA, INC.,**
Plaintiff, Appellant,

v.

**The CHRIS–CRAFT CORPORATION,**
Defendant, Appellee.

Nos. 78–1253, 78–1254.

United States Court of Appeals,
First Circuit.

Argued Feb. 7, 1979.

Decided April 18, 1979.

Thomas C. Tilley, Hato Rey, P. R., with
whom Miguel Melendez Acosta, and Tilley

& Melendez, Hato Rey, P. R., were on brief, for The Chris-Craft Corporation.

F. J. Perez-Almiroty, Rio Piedras, P. R., for La Playa Santa Marina, Inc.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, and JAMESON, Senior District Judge.*

PER CURIAM:

Plaintiff, La Playa Santa Marina, Inc. (La Playa), brought this action under Law 75 of June 24, 1964, as amended (10 Laws of Puerto Rico Annotated 278 *et seq.*), known as the "Dealer's Protection Act"[1] seeking damages from defendant, Chris-Craft Corporation (Chris-Craft), for cancellation of two franchise dealer agreements. Following a non-jury trial, the district court entered judgment in favor of La Playa, finding that Chris-Craft had terminated the agreements without just cause and awarding La Playa damages in the amount of $29,314.10 and attorney fees in the amount of $3,000.00. Chris-Craft has appealed from the judgment in its entirety, and La Playa has cross-appealed from the amount of damages awarded.

On July 23, 1973, La Playa, through its president, Blas Contreras Peralta, entered into two non-exclusive dealership agreements with Chris-Craft—one granting La Playa a dealership for cruisers, and the other a dealership for sport boats. On March 8, 1975, Chris-Craft terminated the agreement for cruisers,[2] and on June 4, 1975, it terminated the agreement for sports boats.[3] This suit was filed on October 24, 1975, La Playa alleging that both agreements were terminated without just cause and seeking damages in the amount of $502,323.97, plus interest, court costs and attorney fees of not less than $50,000. Following a two day trial, the district court entered detailed findings of fact and conclusions of law.

On its appeal defendant contends that the district court erred in (1) concluding that defendant had no just cause to terminate the agreements; (2) determining the burden of proof required of plaintiff in establishing its loss; (3) awarding any damages; and (4) awarding attorney fees. Plaintiff contends that the court erred in its findings on damages and in failing to award a larger attorney fee.

I. *"Just Cause" for Termination of Agreements*

The court's findings on the issue of "just cause" may be summarized as follows:

---

* Of the District of Montana, sitting by designation.

1. The Act provides in part:

   § 278a. *Termination of relationship*

   Notwithstanding the existence in a dealer's contract of a clause reserving to the parties the unilateral right to terminate the existing relationship, no principal or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew said contract on its normal expiration, except for just cause.

   "Just cause" is defined as:

   (d) just cause: nonperformance of any of the essential obligations of the dealer's contract, on the part of the dealer, or any action or omission on his part that adversely and substantially affects the interest of the principal or grantor in promoting the marketing or distribution of the merchandise or service.

2. The letter terminating the cruiser dealership read in part:

   At the present time, Hector Sanchez in Puerto Rico is meeting our requirements in terms of inventorying large boats. He also has good service arrangements in the San Juan area. As Rick and I explained to you at the Miami Boat Show, for this reason, we will not be able to accept orders from you on the larger boats over 35 feet in length. When you have your facilities developed, we will be glad to review the matter with you. In the meantime, we do appreciate your good enthusiasm for Chris Craft and the orders that you have placed with us. Plaintiff's Ex. 9, App. 368.

3. The letter terminating the sport boat dealership read in part:

   The volume of business resulting from the selling agreement entered into between yourselves and ourselves on July 23, 1973 is not satisfactory.

   Accordingly, we are cancelling the Chris-Craft franchise, effective immediately. Moreover, we will appreciate your discontinuing the use of the trademark "Chris-Craft" as outlined in paragraph 12 of the franchise. Plaintiff's Ex. 12, App. 369.

In May, 1973, Contreras visited the home office of Chris-Craft and discussed with its sales manager the purchase of a cabin cruiser by one of his companies. He mentioned that the company was contemplating the development of a housing complex and marina in Puerto Rico. During a second visit he was introduced to Antonio Vasquez as one of Chris-Craft's best dealers, who was to be a new dealer in Puerto Rico, because Chris-Craft was dissatisfied with the selling performance of its present dealer, Hector Sanchez Girona. Vasquez approached Contreras regarding the possibility of a partnership. This proposal was viewed favorably by Chris-Craft's executives. Before dealership agreements were executed Vasquez died. Contreras was then invited by Chris-Craft to pursue the dealership arrangements without Vasquez. The agreements were executed on July 23, 1973.[4]

La Playa's first sale was a cabin cruiser to a friend of Contreras for $163,374.50, representing the actual cost to the dealer. The sale was made with the "full knowledge and approval of the defendant".[5] Through the end of 1974 La Playa had made sales of approximately $400,000, which could "be considered a reasonable volume for a new dealer during its starting year".

In a letter to La Playa dated January 9, 1975, Chris-Craft gave "clear indications" of its "decision to deprive plaintiff of its Dealership status". La Playa made repeated efforts to obtain "cooperation" from Chris-Craft in various areas where Chris-Craft remained silent, including special schooling for service personnel and advice with respect to proposed exhibits and service areas.[6]

At no time prior to the letter of June 4, 1975 terminating the second dealership agreement had Chris-Craft indicated to La Playa any dissatisfaction with the volume of sales. Chris-Craft's other dealer in Puerto Rico, Hector Sanchez, Inc., had shown a clear decline in sales during 1971, 1972, and 1973, but Chris-Craft did not apply the "same standards as they applied in the case of plaintiff".[7]

Chris-Craft for the first time raised in its answer alleged unsatisfactory service to customers, which was not supported by the evidence.[8] Chris-Craft also claimed that La Playa violated the agreements in (a) failing to keep two signs with their name exposed and (b) failing to keep a parts inventory. The "evidence clearly shows that such violations did not in any way adversely affect the interest of the manufacturer, nor the customers", and may not be considered "just cause" for terminating the agreements.

The district court concluded that defendant had failed to show by a preponderance of the evidence that it had met the definition of "just cause" under the Act in "its acts and deeds related to the cancellation" of the agreements; and that as a consequence of "such acts and deeds", the defendant violated the Act and was liable for the resulting damages.

4. The court expressly found, contrary to Chris-Craft's claim, that Chris-Craft did not at any time make the building of the proposed development project a condition precedent to granting the dealerships; and that if there had been such a condition, it should have been made a part of the agreements.

5. The court rejected Chris-Craft's claim that this sale was a violation of the Company's rule against "underpricing" and constituted a basis for termination of the agreement. Rather the court found that La Playa had shown that the boat would be used for demonstration purposes and promotion of future sales, noting that no further sales had been made for less than the established sale price.

6. The court noted the "scarcity of correspondence from defendant, against the abundance of correspondence from plaintiff that remained unanswered" by defendant, "a company which according to its reputation and size, should have given to its mail with its dealers a much better attention".

7. The court found that "no satisfactory explanation was offered by defendant in their testimonial evidence for such a contrasting and obviously discriminatory attitude".

8. The court referred to letters from two of plaintiff's "main customers" and the rebuttal testimony of the purchaser of the first cruiser in support of the finding that La Playa's services to its customers had been satisfactory.

The parties agree that there is little, if any, judicial precedent construing the meaning of "just cause" under the Act, and that a court must apply its own interpretation of the statutory definition of "just cause" as related to the facts of the particular case. On the basis of its other findings the district court here expressly found that the evidence clearly showed that any alleged violations of the agreements did not in any way adversely affect the interest of the defendant "in promoting the marketing or distribution" of its products. Appellant argues that the decision of the district court was clearly erroneous and contrary to the great weight of the evidence and that appellant carried its burden of proving that the agreements were terminated for just cause.

Findings of fact may not of course be set aside unless clearly erroneous and due regard must be given to the opportunity of the trial court to judge the credibility of the witnesses. F.R.Civ.P. 52(a). While there was a sharp conflict in the testimony, from a careful review of the record we cannot say that any of the findings on the issue of "just cause" were clearly erroneous. On the contrary, there was sufficient evidence to sustain each of the findings, and the findings as a whole support the court's conclusion that appellant failed to show that it had just cause to terminate either agreement.

## II. *Damages*

The Dealers' Protection Act provides that if no just cause exists for the termination of the dealer's contract, damages may be awarded for the dealer's investment, inventory, good will, and five times the average annual profit.[9]

The court found that aside from Contreras' general statement that plaintiff made an investment of around $60,000–$80,000 in the development of defendant's business, there was no evidence of the specific amounts "incurred in the acquisition and fitting of the premises, equipment, installation of furniture and utensils", and whether they could not reasonably be used in other of plaintiff's activities. Nor did the financial statements reflect any investment; and Contreras on cross-examination admitted that plaintiff used a shed located on the premises it was planning to develop for the sale of defendant's boats. Likewise there was no evidence "as to the cost of the inventory plaintiff had in stock from whose sale or exploitation he was unable to benefit".

As to good will, the court noted that plaintiff had been in charge of the distribution of defendant's boats for only two

---

9. Section 3 of the Act (10 LPRA 278b) provides:

"278b. Damages

If no just cause exists for the termination of the dealer's contract or detriment to the established relationship, or for the refusal to renew same, the principal shall have executed a tortious act against the dealer and shall indemnify it to the extent of the damages caused him, the amount of such indemnity to be fixed on the basis of the following factors:

(a) the actual value of the amount expended by the dealer in the acquisition and fitting of premises, equipment, installations, furniture and utensils, to the extent that these are not easily and reasonably useful to any other activity in which the dealer is normally engaged;

(b) the cost of the goods, parts, pieces, accessories and utensils that the dealer may have in stock, and from whose sale or exploitation he is unable to benefit;

(c) the good will of the business, or such part thereof attributable to the distribution of the merchandise or to the rendering of the pertinent services, said good will to be determined by taking into consideration the following factors:

(1) number of years the dealer has had charge of the distribution;

(2) actual volume of the distribution of the merchandise or the rendering of the pertinent services and the proportion it represents in the dealer's business;

(3) proportion of the Puerto Rican market said volume represents;

(4) any other factor that may help establish equitably the amount of said good will;

(d) the amount of the profit obtained in the distribution of the merchandise or in the rendering of the services, as the case may be during the last five years, or if less than five, five times the average of the annual profit obtained during the last years, whatever they may be."

years, and found "no evidence as to the actual volume of the distribution of defendant's merchandise and the proportion it represents in plaintiff's business and in the Puerto Rico market". The court found that the financial statements of 1974 and 1975 showed a total net profit of $7,515.90 or an average annual profit of $3,757.95.

The court awarded damages as follows:

(1) $18,789.75, representing five times the average of annual profit obtained during the 18 to 24 months of the life of the dealership agreements;

(2) $10,000 for loss of good will;

(3) $524.35 for services rendered by plaintiff to boats sold by other dealers.[10]

The court also ordered defendant to pay attorney fees in the amount of $3,000 "due to its obvious temerity in the defense of this suit".

Both parties question the court's findings on damages. La Playa argues that it presented sufficient proof to sustain an award of $80,000 for loss of investment capital, $37,078.90 for loss of inventory, $75,000 for loss of good will, and $75,000 for damages based on an average net profit. Chris-Craft contends that (1) the district court properly concluded that there was insufficient evidence to support any award for loss of investment capital and inventory, but (2) erred in finding that La Playa produced any net income or sustained any loss for good will.[11]

(a) Investment Capital

■ Damages are limited to the "actual value of the amount expended . . . in the acquisition and fitting of premises, equipment, installations, furniture and utensils", and then only to the extent that they "are not easily and reasonably useful to any other activity in which the dealer is normally engaged". The record does not contain any evidence of specific amounts expended for any of these items. La Playa argues that the evidence shows "a lost investment of time, money, and unrealized profits, amounting pretty close to" $81,000.00. Included are salaries paid to salesmen and a secretary, commissions, office space, trips, "and in general all overhead expenses". La Playa admits also that the capital expenditures are not shown in any of the financial statements, but argues that this should not be taken as a basis to exclude them. Moreover, as the district court found, there was no evidence to show whether any of the facilities were also useful in La Playa's construction business.

We conclude that the findings of the district court with respect to the alleged loss of the investment capital are supported by the record and are not clearly erroneous.

(b) Inventory

■ The district court found, in the language of the Act, that there was "no evidence as to the cost of the inventory plaintiff had in stock from whose sale or exploitation he was unable to benefit". In contending that this finding was clearly erroneous, La Playa calls attention to the testimony of Contreras, in which he stated that he had "at least two boats" on hand at the time of the cancellation and had trouble disposing of them, and that he also had one boat on hand at the time of trial, and it was not worth what he paid for it. La Playa relies primarily on a "Table of Comparable Sales", attached to its brief as an appendix, but not in evidence,[12] which shows a "left

10. The award of $524.35 was not appealed by either party.

11. We find no merit in Chris-Craft's contention that La Playa was required to prove damages by "clear, strong and convincing evidence, not merely a preponderance of evidence". Chris-Craft relies on 32A C.J.S. *Evidence* § 1023a at 663. The cases there cited impose the higher standard "where an adverse presumption is to be overcome or where there are peculiar facilities for perpetrating injustice, as by fraud" or

"where the wisdom of experience has demonstrated the need for greater certainty". In our opinion the requirements of the statute here do not fall within any of these categories. The statute simply established a public policy that dealership agreements may be cancelled only for just cause.

12. La Playa's brief states that this "Table of Comparable Sales between Defendant's only other dealer, Mr. Hector Sanchez, and Plaintiff for the years of 1971 through 1977" was sub-

over inventory after cancellation", subsequently "sold at considerable loss", in the amount of $37,058.70, and a financial statement dated December 31, 1977 showing an inventory of $17,242.75.

There was no evidence with respect to the cost or sale price of any boats or other inventory. The testimony was vague and indefinite, and we find nothing in the record to support the value of the inventory contained in the appendix annexed to La Playa's brief. Under these circumstances we cannot find that the finding of the district court on the alleged inventory loss was clearly erroneous.

(c) Good Will

■ In support of its claim that the evidence would sustain an award of "at least $75,000" for good will, La Playa relies upon the Table of Comparable Sales, and particularly the fact that during 1974, the peak in La Playa sales, "Sanchez only sold $183,-180.50 out of total sales in the Puerto Rican market of $486,448.20, thus resulting in a proportion of 62.3% for Plaintiff and only 37.6% for Sanchez". Chris-Craft argues that La Playa's claim is "unsupported and unexplained", and that a business with such a short span of operation and limited sales performance had not "generated good will as contemplated in the statute and as generally understood in the business world".

The statute enumerates four factors which should be considered in determining an award for good will (see note 9). With respect to the first three factors, the district court found that La Playa had been in charge of the distribution of Chris-Craft's boats for only two years, and had presented "no evidence as to the actual volume of the distribution of defendant's merchandise and the proportion it represents in plaintiff's business and in the Puerto Rican market". The trial court is allowed considerable discretion and leeway in the fourth factor, i. e., "any other factor that may help establish equitably the amount of said good will". Viewing the record as a whole, we cannot

say that the award of $10,000 for good will was clearly erroneous.

(d) Average Annual Profit

■ Unaudited reports prepared by an accountant in January, 1977, and a Corporation Income Tax Return for 1974, signed on March 10, 1977, show net income for 1974 and 1975 combined of $7,515.90. La Playa argues that, "Although the 1974 and 1975 Financial Statements show a net profit of $7,515.90", the rest of the evidence "is to the effect that the limitations in the profit shown in the books were not consistent with the actual profits" and were also the "direct result of the adverse effect of Defendant's acts and deeds in collusion with Hector Sanchez". La Playa contends further that while there was a "total over all length of life for the dealership of 24 months", there was only one year of normal operation, i. e., 1974.

Chris-Craft contends that there was no evidence to support the profit set forth in the financial statements and that La Playa actually operated at a "net loss" during the period it was a franchised dealer and is not entitled to any recovery.

While the proof with respect to the net profit during the period of the dealerships is uncertain and conflicting, we cannot say that the district court was clearly erroneous in finding that La Playa did establish by a preponderance of the evidence that it suffered damage as a result of the cancellation of the agreements. We conclude also that the court's finding of a net profit of $7,515.90 for the two years, based on the financial statements, is not clearly erroneous. Under the express terms of the statute this must be computed on the basis of the average for the two years, i. e., $3,757.95. Five times this average results in the amount of $18,789.75.

### III. Attorney's Fees

■ Rule 44.4(d) of the Puerto Rico Rules of Civil Procedure, 32 L.P.R.A. Appendix II, provides: "Where a party has

---

mitted to the district court with its reply brief, but "apparently overlooked" by the district judge in formulating his findings of fact. Evi-

dence, of course, cannot be introduced via a brief; the district court was correct in ignoring it.

been obstinate, the court shall in its judgment impose on such person the payment of a sum for attorney's fees." In construing this rule in *Rivera v. Rederi A/B Nordstjernan*, 456 F.2d 970, 975 (1 Cir. 1972), this court said: "To impose attorney's fees the court must find that a party was obstinate, that he was stubbornly litigious, prolonging the duration of the suit or causing the plaintiff unnecessary inconvenience and expenses. *Soto v. Lugo*, 76 P.R.R. 416, 419 (1954)."

We conclude that the district court erred in awarding La Playa attorney fees due to Chris-Craft's "obvious temerity in the defense of this suit". The case presented close questions and sharp conflicts in the evidence on both liability and damages. La Playa sought damages in excess of $500,000 and recovered less than $30,000. The evidence does not support a finding of obstinacy in the defense of the action.

### IV. *Conclusion*

We affirm the judgment except for the award of attorneys fees. The case is remanded for the deletion of the provision for attorney's fees. Each party shall bear its own costs on this appeal.