CC—2000—845                                            1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ladislaus M. Szendrey y su Esposa Maricarmen Ramos de Szendrey, etc.<br><br>Demandantes-Peticionarios<br><br>v.<br><br>Hospicare, Inc. y otros<br><br>Demandados-Recurridos | Certiorari<br><br>2003 TSPR 18<br><br>158 DPR _____ |

Número del Caso: CC-2000-845


Fecha: 14 de febrero de 2003


Tribunal de Circuito de Apelaciones:
                        Circuito Regional I


Panel integrado por su Presidente, el Juez Urgell Cuebas y los Jueces Cordero y González Rivera

Abogados de la Parte Peticionaria:
                        Lcdo. Lino J. Saldaña
                        Lcdo. Raúl Tirado Rodríguez


Abogados de la Parte Recurrida:
                        Lcdo. José G. Barea Fernández
                        Lcdo. Ángel López Hidalgo



Materia: Cumplimiento Específico de Contrato

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ladislaus M. Szendrey y su
Esposa Maricarmen Ramos de
Szendrey y la Sociedad Legal
de Gananciales que existe
entre ellos

    Demandantes-Recurrentes

      vs.                    CC-2000-845     Certiorari

Hospicare, Inc. y otros

    Demandados Recurridos

Opinión del Tribunal emitida por el Juez Presidente señor Andréu García

San Juan, Puerto Rico, a 14 de febrero de 2003

El 23 de abril de 1993, Hospicare, Inc., en carácter de vendedor y el Sr. Ladislaus Szendrey y su esposa, en carácter de compradores, otorgaron un contrato de promesa bilateral de compraventa sobre las oficinas Núms. 802 y 804 del edificio Condominio Metropolitan Professional Park, ubicado en Río Piedras. Para ese entonces, Hospicare, Inc., era la propietaria de todas las oficinas localizadas en cinco de los diez pisos del Condominio Metropolitan Professional Park. Por otro lado, Inversiones y Desarrollos del Caribe, Inc. (INDECA) era la dueña de las oficinas restantes en los otros cinco pisos del

**edificio. Al poco tiempo, Hospicare e INDECA alquilaron todas las oficinas del condominio al Departamento de Corrección y otras entidades relacionadas.**

El 23 de marzo de 1994, el Sr. Ladislaus Szendrey, su esposa y la sociedad legal de gananciales compuesta por ambos presentaron ante el Tribunal de Primera Instancia una demanda contra Hospicare, Inc.; INDECA; Enrique Irizarry Sorrentini, su esposa y la sociedad de gananciales compuesta por ambos; Baldomero Collazo Salazar, su esposa y la sociedad legal de gananciales compuesta por ambos; y Metropolitan Office Park, Inc. Como primera causa de acción, alegaron incumplimiento del contrato de compraventa de las oficinas Núms. 802 y 804. Solicitaron que se otorgase la escritura de compraventa correspondiente. Como segunda causa de acción, plantearon que los demandados estaban infringiendo las disposiciones de la escritura matriz en cuanto al uso permitido de los locales del condominio y de ciertos elementos comunes. Solicitaron el cumplimiento específico de las restricciones incluidas en la escritura matriz y el resarcimiento de los daños sufridos como resultado de tales violaciones.

La demanda fue enmendada en varias ocasiones con la autorización del tribunal.[1] En la tercera demanda enmendada

---

[1] En la primera demanda enmendada se incluyeron como demandados, a los inquilinos de todas las otras unidades del Condominio. Se solicitó como remedio la concesión de daños por la cantidad de cincuenta mil ($50,000) dólares. En la segunda demanda enmendada se incluyó a Metropolitan Profesional Park, Inc. como demandado. En la tercera demanda enmendada, no se alteró la lista de demandados, pero se extendió la solicitud del remedio en daños y perjuicios a todos los demandados y se aumentó la cuantía a

se ampliaron las alegaciones respecto a los daños por los cuales se reclamaba para incluir a todas las partes demandadas, extendiéndose a éstas de ese modo la reclamación de una indemnización por quinientos mil dólares ($500,000).

El 20 de enero de 2000, los demandantes y Hospicare, Inc. presentaron en el tribunal un convenio de transacción, titulado "Estipulación de Transacción y Relevo", en la que se informa que Hospicare, Inc., otorgó la escritura de compraventa a favor de los demandantes, según solicitado en la primera causa de acción, y que habían llegado a un acuerdo sobre los daños que eran responsabilidad de la codemandada. Específicamente la parte demandante se reservó el derecho a proseguir con sus reclamaciones en contra de los demás codemandados. El 21 de enero de 2000, el foro de instancia dictó sentencia parcial aceptando la estipulación de las partes y decretando el desistimiento con perjuicio de las reclamaciones de la parte peticionaria contra Hospicare.

Oportunamente, INDECA solicitó la reconsideración de dicha sentencia parcial. Alegó que de sostenerse la

---

quinientos mil ($500,000) dólares. En la cuarta demanda enmendada, la cual fue presentada luego de haberse presentado el recurso de <u>certiorari</u> ante el Tribunal de Circuito de Apelaciones, se eliminó a Hospicare como demandado para reflejar el acuerdo de transacción con ésta. Además, se adicionaron, como partes demandadas, en cuanto al remedio interdictal, a F. Castillo Family Properties, Inc. y Gam Realty, Sociedad en Comandita, S.E., adquirentes de las unidades previamente poseídas por Hospicare y se restringió hasta el 31 de marzo de 1999, fecha en que los primeros adquirieron las unidades de Hospicare, el período para el cual se reclaman los daños.

transacción, procedía la desestimación de las reclamaciones en su contra. En la alternativa, solicitó que se le permitiese traer como terceros demandados a Hospicare y a los actuales titulares de las unidades del condominio que antes pertenecían a Hospicare, Sr. Luis Fernando Castillo y Sra. Gladys Cruz Chinea. El Tribunal de Primera Instancia sostuvo su sentencia parcial, denegó la solicitud de desestimación contra INDECA y no permitió la demanda contra terceros.[2]

**Inconformes, INDECA recurrió junto a los otros codemandados, al Tribunal de Circuito de Apelaciones. Este sostuvo la denegatoria del tribunal de instancia de desestimar la demanda contra INDECA por entender que de la demanda se desprende una reclamación separada e independiente de la que fue transigida con Hospicare, Inc., a saber, una solicitud de injunction ordenando a los demandados a observar el destino y el uso de los apartamentos y las áreas comunes del edificio, según dispuestas en la escritura del régimen de propiedad horizontal. No obstante, concluyó dicho foro intermedio que a pesar de afectar a todos los codemandados la reclamación por daños, la intención de la parte demandante fue relevar de responsabilidad a Hospicare,**

---

[2] Con fecha de 19 de marzo de 2000, la cuarta demanda enmendada eliminó a Hospicare, Inc. como demandado para reflejar el acuerdo de transacción con ésta. Se adicionaron además, a los nuevos adquirentes de las unidades previamente poseídas por Hospicare como partes demandadas en el injunction solicitado en la segunda causa de acción, limitando la reclamación de daños contra éstos al 31 de marzo de 1999, fecha en que adquirieron las unidades de Hospicare, Inc.

**Inc., solamente. Por ello, determinó que procedía la demanda contra tercero presentada por INDECA, ya que alegadamente todos son cocausantes de los daños por los cuales se reclama y la determinación de la proporción de la responsabilidad atribuible a cada cocausante requiere la presencia todos. Estimó que de otro modo se vulneraría el principio de economía procesal ya que una vez impuestos los daños, INDECA se vería obligada a presentar una acción de nivelación separada y posterior al presente litigio.**

Resuelto lo anterior, la parte demandante acude ante nos señalando como errores del foro apelativo el "resolver que INDECA puede traer al pleito como tercero demandado a Hospicare, ya que Szendrey [la parte demandante] relevó a éste de toda responsabilidad y en consecuencia le toca a Szendrey satisfacer o absorber cualquier reclamación que INDECA pueda tener en el pleito de daños como deudor solidario por razón de su derecho a nivelación."[3]

## II.

La Regla 12.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R.12.1, dispone que "...un demandado podrá en cualquier momento después de comenzado el pleito, como demandante contra tercero, notificar un emplazamiento y demanda a una persona que no sea parte en el pleito y (1)

---

[3] El segundo señalamiento de error dispone que, contrario a lo determinado por el Tribunal de Circuito de Apelaciones, la demanda contra tercero se solicitó tardíamente. La improcedencia de la demanda contra tercero en el presente caso nos releva de atender este segundo señalamiento de error.

puede serle responsable al demandado por toda o parte de la reclamación del demandante, o (2) que sea o pueda serle responsable exclusivamente al demandante." El propósito de esta regla es establecer un mecanismo para facilitar la resolución pronta y económica de pleitos múltiples que puedan surgir de unos mismos hechos. Camaleglo Corp. v. Dorado Wings, Inc., 118 D.P.R. 20 (1986); A.A.A. v. Builders Ins. Co., 115 D.P.R. 57 (1984). Esta acción no crea, extiende o limita derechos sustantivos, sino que acelera su dilucidación. Por ello, la reclamación contra tercero sólo procede cuando su responsabilidad sea contingente al resultado de la acción principal o cuando el tercero le sea "secundaria o directamente responsable al demandante." Gen. Accident Insurance Co. v. Ramos, res. el 14 de junio de 1999, 99 TSPR 91; Camaleglo Corp. v. Dorado Wings, Inc, supra.

En Puerto Rico, el derecho de nivelación entre cocausantes de un daño ha sido reconocido a partir de García v. Gobierno de la Capital, 72 D.P.R. 138 (1951). La consabida norma que aplica cuando un daño es causado por dos o más personas, establece que todos los cocausantes responden al demandante por los daños sufridos por él. Sin embargo, entre estos cocausantes existe un derecho de contribución o nivelación, procedente del artículo 1098 del Código Civil, 31 L.P.R.A. §3109, que permite al deudor solidario que haya pagado más de lo que le corresponde, reclamar a los demás codeudores las porciones correspondientes. Security Ins. Co. v. Tribunal Superior,

101 D.P.R. 191 (1973). Así, hemos determinado que los cocausantes responden solidariamente al perjudicado, pero el efecto oneroso se distribuye en proporción a sus respectivos grados de negligencias en la relación interna entre ellos. Id., en la pág. 208. Véase además, Monserrate Arroyo v. Hospital de la Concepción, 130 D.P.R. 596 (1992).

El propósito fundamental del derecho de nivelación en Puerto Rico ha sido el de evitar el enriquecimiento injusto. Véase, P.R. Fuels, Inc. v. Empire Gas Co., Inc., res. el 2 de noviembre de 1999, 99 TSPR 168. Según expresamos en Ramos v. Caparra Dairy, 116 D.P.R. 60, 64 (1985), se evitan "situaciones de enriquecimiento injusto, reconduciendo subjetivamente la carga prestacional hacia quienes, en último término, corresponda. [...] El derecho a la nivelación se basa principalmente en la equidad, toda vez que resulta completamente injusto que siendo dos o más personas las causantes de un daño, se permita que el demandante por razón de parentesco, amistad, colusión, o por cualquier motivo, releve a éstas de responsabilidad y dirija la acción exclusivamente contra otros." García v. Gobierno de la Capital, supra. Véase además, Monserrate Arroyo v. Hospital de la Concepción, supra.

Aunque el derecho de nivelación de un codeudor no surge hasta que éste haya efectuado un pago mayor a la proporción que le corresponde, el codeudor sujeto al pago puede incoar una reclamación contingente contra el otro codeudor. Security Ins. Co. v. Tribunal Superior, supra, en la pág. 198, García v. Gobierno de la Capital, supra,

146. Esto es, el cocausante de un daño puede presentar, conforme la Regla 12.1 de Procedimiento Civil, supra, una demanda contra tercero en el pleito donde se le requiere responder por tal daño en una cantidad mayor a la porción que representa su grado de contribución a la ocurrencia del daño.

El relevo o descargo de responsabilidad hecho por un demandante a favor de un codemandado y codeudor solidario, no releva de responsabilidad a los demás causantes comunes del daño, cuando la intención de las partes en el acuerdo de desistimiento así lo reconoce. P.R. Fuels, Inc. v. Empire Gas Co., Inc., res. el 2 de noviembre de 1999, 99 TSPR 168; Merle v. West Bend Co., 97 D.P.R. 403 (1969). En Merle, supra, los codemandados alegaron que siendo la responsabilidad entre ellos solidaria y habiéndose relevado de responsabilidad a uno de los demandados, tal relevo beneficiaba a todos los codemandados; procediendo así la desestimación a favor de todos los codemandados. Allí consideramos como factor determinante la intención de las partes en el relevo del causante común de un daño, conforme a las disposiciones del artículo 1233 de nuestro Código Civil, 31 L.P.R.A. §3471, el cual dispone que si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Determinamos que los cocausantes de un daño no quedaban relevados de responsabilidad en el caso en que esa no sea la intención de las partes en el convenio de transacción. Merle, supra, en la pág. 412.

En _Merle_, supra, sin embargo, no nos expresamos respecto a la cuestión planteada en este caso; esto es, si es necesario acumular como tercero demandado al cocausante del cual se desiste a los efectos de la nivelación. Señalamos allí que le correspondía al foro de primera instancia determinar el alcance del convenio de transacción con respecto al cocausante que permaneció en el pleito, porque aparentaba haberse pactado en el convenio que la demandante asumía la responsabilidad del codeudor contra quien desitió ante el codeudor que permanecía en el pleito. _Id_., en la pág. 413.

Al igual que en _Merle_, supra, es necesario en el presente caso analizar el alcance del relevo pactado en el convenio de transacción para poder determinar la procedencia de la demanda contra tercero solicitada por INDECA. Si el codemandado que permanece en el pleito sólo se encuentra sujeto a responder a la parte demandante <u>por la porción representativa de su grado de contribución</u> a la causa del daño, es innecesaria e improcedente una demanda contra tercero, por no cumplir con el requisito de responderle el tercero al demandado por toda o parte de la reclamación. R. 12.1(2) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III. Véase en general, <u>Gen. Accident Insurance Co. v. Ramos</u>, supra. La procedencia de la demanda contra tercero depende, por lo tanto, de un análisis práctico de los hechos en el cual es necesario caracterizar la responsabilidad del o de los demandados restantes, esto es, aquel o aquellos que no han formado

parte del convenio transaccional. Dicho de otro modo, habrá que determinar si les corresponderá a éstos responder o no al demandante por la responsabilidad del cocausante que fue liberado por éste como resultado de la transacción. Véase en general, A.A.A. v. Builders Ins. Co., supra.

III.

En el presente caso, el Tribunal de Primera Instancia desestimó todas las reclamaciones contra Hospicare, Inc. el 21 de enero de 2000, al aprobar la Estipulación de Transacción y Relevo del 20 de enero de 2000, suscrita entre ambas, la parte demandante y la codemandada.

En lo relativo al alcance del relevo de Hospicare, Inc., el número 1(e) de la mencionada estipulación expresa que los demandantes "relevan a Hospicare, Inc. ... de toda y cualquiera responsabilidad, económica o de cualquier naturaleza, por cualquier causa de acción que tengan o hayan tenido entre sí, como consecuencia de todos los hechos a que se contrae esta demanda, las hayan ejercido o no, incluyendo el procedimiento de quiebra llevado a cabo por Hospicare, Inc." En el mismo inciso, la parte demandante relevó de responsabilidad a los nuevos adquirentes de las unidades propiedad de Hospicare, Inc., el Sr. Castillo Barahona y a su esposa, Sra. Cruz Chinea, por "los daños o causas de acción que pudieran tener contra éstos por razón de actos de Hospicare, Inc. ... cometidos hasta el día 31 de marzo de

1999, fecha en que los señores Catillo Barahona-Cruz Chinea adquirieron la titularidad de los inmuebles." En el número 1(f) se aclara que "los demandantes expresamente se reservan íntegramente todos y cada uno de sus derechos de proseguir su demanda y causas de acción, incluyendo tanto las que se refieran al resarcimiento de daños, como las que se refieran al cumplimiento del régimen de propiedad horizontal, contra todos y cada uno de los codemandados en el pleito que no queden relevados por esta transacción".

Podemos observar, por lo tanto, la voluntad inequívoca de la parte demandante de relevar a Hospicare, Inc., de *toda* responsabilidad procedente de los hechos del presente caso relativos al incumplimiento del contrato, a los daños y perjuicios reclamados y al cumplimiento con el régimen de propiedad horizontal.[4] Esta voluntad, sin embargo, no afecta la causa de acción contra los demás codemandados en virtud de la acción de daños y del injunction permanente solicitado, ya que así se convino expresamente.

Constituye el lenguaje central que dispone de esta controversia, el relevo expreso de la codemandada (Hospicare, Inc.) de "toda o cualquier sentencia en su

---

[4] Una vez Hospicare, Inc. cesa de ser titular de participación alguna en el edificio sometido a propiedad horizontal, procede la desestimación de la acción sobre el cumplimiento con tal régimen. Artículo 15 de la Ley de la Propiedad Horizontal, según enmendada por la sección 1 de la Ley Núm. 157 de 4 de junio de 1976, 31 L.P.R.A. §1292m(g).

contra que surja o pueda surgir a favor de otras personas, **codemandadas o no en la demanda,** como consecuencia de reclamaciones de coparte, de demandas contra tercero o acciones de nivelación o contribución **ya instadas o que en el futuro se insten,** contra ellas para resarcirse de condenas impuestales [sic] a favor de las demandantes". **Vemos pues, que la intención de las partes fue relevar a Hospicare, Inc., de los hechos relativos a la segunda causa de acción que exponía a Hospicare, Inc., a responder por los daños ocasionados como titular de algunos apartamentos y como cocausante solidario, junto con los otros titulares de derechos sobre los apartamentos del edificio en cuestión.**

**En otras palabras, aun cuando mediante la sentencia final que dicte en su día el Tribunal de Instancia concluya que los codemandados que permanecen en el pleito contribuyeron conjuntamente y solidariamente con Hospicare a los daños causados a la parte demandante, estos no tendrán que repetir contra Hospicare, Inc., por el grado de la contribución de ésta a la ocurrencia de tales daños, ya que en su sentencia, el Tribunal tendrá que determinar el monto líquido total de los daños ocasionados a la parte demandante por <u>todos</u> los cocausantes de los mismos y deducirá de dicho monto total aquella porción monetaria equivalente al grado de responsabilidad de Hospicare. Igualmente, a los fines de la nivelación entre los codemandados que permanezcan en**

el pleito[5], el tribunal tendrá que determinar el grado de contribución de cada uno de éstos a los daños sufridos

_____

[5] El derecho de contribución, también llamado de <u>nivelación</u>, de reembolso, y de regreso, entre codeudores solidarios, está reconocido en el Art. 1098 del Código Civil, 31 L.P.R.A. sec. 3109, que dispone:

> "El pago hecho por uno de los deudores solidarios extingue la obligación.
>
> <u>El que hizo el pago sólo puede reclamar de sus codeudores la parte que a cada uno corresponda, con los intereses del anticipo.</u>
>
> La falta de cumplimiento de la obligación por insolvencia del deudor solidario será suplida por sus codeudores a prorrata de la deuda de cada uno".

Desde <u>Méndez v. Torres</u>, 56 D.P.R. 74, 79 (1940), expresamos que:

"La confusión que a primera vista se advierte desaparece cuando se considera que el concepto de solidaridad sólo se aplica a la obligación de los deudores para con el acreedor [*relación externa*], pero no a las relaciones de los deudores entre sí [*relación interna*]. Para con el acreedor la responsabilidad es solidaria. Entre los deudores la responsabilidad se divide. De modo claro y terminante prescribe el artículo 1098 del Código Civil que 'el pago hecho por uno de los deudores solidarios extingue la obligación' y que 'el que hizo el pago sólo puede reclamar de sus codeudores la parte que a cada uno corresponda con los intereses del anticipo.'"

por la parte demandante, aún cuando permanecen obligados solidariamente frente a ésta por la totalidad de los daños restantes, esto es, los que resulten luego de descontada la suma correspondiente al grado de contribución de Hospicare.

Por todo lo cual, la demanda contra tercero no procede en este caso ya que no cumple con el propósito de la Regla 12.1 de Procedimiento Civil, supra, que requiere que el tercero le pueda ser responsable al demandado por toda o parte de la reclamación del demandante o le pueda ser responsable exclusivamente al demandante.

IV.

Por los fundamentos antes expuestos procede revocar la sentencia del Tribunal de Circuito de Apelaciones a los fines de establecer la improcedencia de la demanda contra tercero, según resuelto por el Tribunal de Primera Instancia.


José A. Andréu García
Juez Presidente

---

Véase, Carr v. Nones, 98 D.P.R. 236 (1970), donde este Tribunal rehusó extender la aplicación de tal artículo a un contrato tácito de fianza solidaria.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ladislaus M. Szendrey y su
Esposa Maricarmen Ramos de
Szendrey y la Sociedad Legal
de Gananciales que existe
entre ellos

    Demandantes-Recurrentes

        vs.                   CC-2000-845      Certiorari

Hospicare, Inc. y otros

    Demandado

SENTENCIA

San Juan, Puerto Rico, a 14 de febrero de 2003

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la sentencia dictada por el Tribunal de Circuito de Apelaciones a los fines de establecer la improcedencia de la demanda contra tercero, según resuelto por el Tribunal de Primera Instancia.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez está inhibido.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo