EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Us Fire Insurance Company y otros<br><br>    Demandante-Recurrido<br><br>        v.<br><br> Autoridad de Energía Eléctrica y otros<br><br>    Demandada-Peticionaria<br><br>        v.<br><br>Universal            Insurance Company; Federal  Insurance Company;  Royal   &   Sun Alliance Insurance Company<br><br>    Terceros   Demandados-<br>    Peticionarios | Certiorari<br><br>2008 TSPR 160<br><br> 175 DPR _____ |

Número del Caso: CC-2006-1060

Fecha: 24 de septiembre de 2008

Tribunal de Apelaciones:

            Región Judicial de Carolina Panel X

Juez Ponente:

            Hon. Carmen A. Pesante Martínez

Abogados de la Parte Peticionaria:

            Lcdo. Luis M. Ortega García
            Lcdo. José A. Andreu Fuentes


Abogados de la Parte Recurrida:

            Lcdo. Jaime F. Agrait Lladó
            Lcda. Blanca E. Agrait Lladó

Materia: Daños y Perjuicios


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| US Fire Insurance Company y otros<br><br>  Demandante-Recurrido<br><br>      v.<br><br>Autoridad de Energía Eléctrica y otros<br><br>  Demandada-Peticionaria<br><br>      v.<br><br>Universal Insurance Company; Federal Insurance Company; Royal & Sun Alliance Insurance Company<br><br>  Terceros Demandados-<br>  Peticionarios | CC-2006-1060 |

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 24 de septiembre de 2008

En este caso nos corresponde determinar si en virtud de un acuerdo transaccional la parte recurrida puede retener una cantidad de dinero cobrada en exceso a lo adeudado según la sentencia que le favorece.

Pasemos entonces a resumir los hechos que sirven de trasfondo a la controversia ante nuestra consideración.

I

El 26 de julio de 1996 ocurrió un accidente en el que un helicóptero de la Policía de Puerto Rico se estrelló al impactar unas líneas eléctricas que no estaban debidamente marcadas, en las inmediaciones de la Represa Carraízo. En el accidente fallecieron tres policías que tripulaban la nave.

A raíz de estos sucesos, se presentaron varias demandas de daños y perjuicios en contra de la Autoridad de Energía Eléctrica (AEE) y la Autoridad de Acueductos y Alcantarillados (AAA). Además, U.S. Fire Insurance Company (US Fire), aseguradora de la Policía de Puerto Rico, presentó una demanda de subrogación para recuperar los $842,048 pagados por la pérdida del helicóptero.

El 10 de septiembre de 1998, el Tribunal de Primera Instancia declaró con lugar las demandas presentadas, ordenando el pago de la cantidad reclamada (los $842,048). Además, a tenor con lo dispuesto en la Regla 44.1 (d) de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1 (d), el tribunal ordenó el pago de honorarios de abogados e intereses por temeridad. También declaró con lugar la demanda de subrogación presentada por US Fire.

US Fire solicitó la ejecución de la sentencia dictada a su favor. Para satisfacer la sentencia, la AEE consignó en el tribunal $250,000 y el Sindicato de Aseguradoras de la AEE (el Sindicato) consignó $750,000, para un total de $1,000,000. US Fire presentó una moción en la que solicitó el retiro de los fondos. En la moción hizo una reserva expresa de derecho por entender que la suma retirada representaba menos de lo que le correspondía por sentencia. Explicó, que los intereses sobre la sentencia eran de 9.5% anual, que era la tasa aplicable a litigantes privados. Adujo, además, que debían sumarse a la cantidad a pagar los honorarios de abogados y las costas del litigio. A base de lo anterior, US Fire reclamó la cantidad de $1,588,294.60,

como suma adeudada. El Tribunal de Primera Instancia autorizó el retiro de los fondos consignados.

Posteriormente, la aseguradora de la AAA, Zurich Insurance Company (Zurich) y US Fire suscribieron un contrato de transacción. Mediante el mismo, Zurich se comprometió a pagar **la mitad del principal** ($842,048) de la sentencia dictada a favor de US Fire, **cantidad que ascendía a $421,000.** A cambio, US Fire liberó a Zurich de toda responsabilidad bajo la póliza que ésta tenía con la AAA. No obstante, se reservó el derecho de continuar su reclamación contra la AAA hasta el pago total de lo adeudado conforme a la sentencia, incluyendo, claro está, los intereses adeudados.

Entretanto, el Tribunal de Primera Instancia emitió una resolución en la cual determinó que la tasa de interés aplicable a la sentencia dictada era 5.25% anual, que es la tasa de interés aplicable a entidades gubernamentales. De dicha resolución US Fire acudió al Tribunal de Apelaciones. Ese tribunal confirmó, esencialmente, la resolución recurrida, aunque modificó la tasa de interés aplicable de 5.25% a 5.5%, por ser la tasa de interés prevaleciente al momento en que se dictó la sentencia de instancia. Posteriormente, este Tribunal confirmó la determinación del foro intermedio. *Gutiérrez Calderón v. U.S. Fire Insurance Company*, res. 10 de febrero de 2006, 166 D.P.R. ___, 2006 T.S.P.R. 21.

En atención a lo anterior, la AEE presentó ante el Tribunal de Primera Instancia una moción solicitando que se le ordenara a US Fire devolver el dinero retirado en exceso

del monto de la sentencia dictada a su favor. En síntesis, alegó que la cantidad total a la cual tenía derecho US Fire en virtud de la sentencia dictada era $1,262,036.22, que incluía principal más intereses. Por lo tanto, luego de recibir el pago de $1,000,000 y de $421,000, US Fire recibió $158,963.78 en exceso de lo que le correspondía por sentencia. La AEE solicitó la devolución de ese dinero.

US Fire se opuso. Alegó que el pago realizado por Zurich ocurrió como resultado de una transacción contractual y la cantidad pagada fue para comprar el riesgo de que se determinara judicialmente que se debía pagar la tasa de interés aplicable a entidades privadas. Señaló, que si la controversia sobre la tasa de interés aplicable se hubiera resuelto a favor de US Fire, esta última no hubiese podido reclamar sumas adicionales a Zurich sin violar el acuerdo transaccional. Arguyó, que el contrato transaccional se acordó exclusivamente para dar por terminado el litigio entre ambas aseguradoras. Añadió, que la AEE no podía pretender que se le acreditara parte del dinero que Zurich pagó a US Fire en virtud del acuerdo transaccional.

El Tribunal de Primera Instancia mediante resolución emitida el 22 de mayo de 2006, avaló la posición de US Fire y determinó que la devolución de dinero solicitada por la AEE era improcedente. De dicha determinación la AEE y el Sindicato acudieron ante el Tribunal de Apelaciones mediante un recurso de *certiorari.*

El Tribunal de Apelaciones denegó la expedición del auto. Arguyó en su resolución que no se había distribuido la

responsabilidad entre las codemandadas y que tampoco se había determinado la cuantía correspondiente a las costas y honorarios de abogados, por lo que no era posible determinar si se había pagado en exceso.[1] Añadió que en caso de que el reclamo de la AEE tuviera mérito, lo que procedía era una acción de nivelación en contra de la AAA.

Inconformes, la AEE y el Sindicato acudieron ante nosotros y reiteraron lo planteado ante los foros inferiores. Expedimos el auto solicitado. Ambas partes han comparecido, por lo que pasamos a resolver.

## II

Al enfrentarnos a la controversia en este caso, debemos comenzar repasando nuestra normativa respecto la figura del contrato de transacción y sus efectos sobre una reclamación en daños y perjuicios.

## A

El Artículo 1709 del Código Civil, 31 L.P.R.A. sec. 4821, define el contrato de transacción como un acuerdo mediante el cual "las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado". Este contrato --descrito por Scaevola como un "instrumento de paz alcanzada"-- es consensual, recíproco y oneroso. En éste, las partes, mediante sacrificios mutuos, finiquitan una controversia con el propósito de evitar los pesares que

---

[1] Debemos aclarar que contrario a lo expresado por el Tribunal de Apelaciones, el foro de instancia indicó que la cuantía correspondiente a los honorarios de abogados era $5,000.

conllevaría un litigio. Q. M. Scaevola, *Código Civil*, Tomo XXVIII, Instituto Editorial Reus, Madrid, 1953, pág. 246. Véanse, *Mun. de San Juan v. Professional Research & Community Services*, res. 18 de mayo de 2007, 171 D.P.R. ___, 2007 TSPR 95; *López Tristani v. Maldonado Carrero*, res. 8 de septiembre de 2006, 168 D.P.R. ___, 2006 TSPR 147; *Neca Mortgage v. A & W Developers,* 137 D.P.R. 860 (1995); *Citibank v. Dependable Insurance Company*, 121 D.P.R. 503 (1988), y otros casos allí citados.

Varios son los requisitos necesarios para su validez. Primero, se requiere exista una controversia o relación jurídica incierta --judicial o extrajudicial-- que represente la posibilidad de un litigio o que se esté ya en contienda. *Mun. de San Juan v. Professional Research & Community Services, supra.* Véase también, S. Tamayo Haya, *El contrato de transacción*, Thomson Civitas, Madrid, 2003, pág. 75. La incertidumbre se refiere al concepto subjetivo que tengan las partes sobre los elementos objetivos --ciertos y determinados-- de la relación jurídica. Tamayo Haya, *op. cit.* Segundo, las partes tienen la intención de sustituir, mediante la transacción, esta relación incierta con la seguridad de otra "cierta e incontestable." *Mun. de San Juan v. Professional Research & Community Services, supra.* El tercer requisito lo representa las mutuas concesiones de las partes. Las recíprocas concesiones "constituyen no tan sólo el método esencial para el desarrollo de la causa del negocio transaccional, sino que éstas pasan a formar parte de la causa." *López Tristani v. Maldonado Carrero, supra.* En *Mun.*

*de San Juan v. Professional Research & Community Services,
supra,* indicamos, con acierto, que "toda transacción supone
que las partes tienen dudas sobre la validez o corrección
jurídica de sus respectivas pretensiones y optan por resolver
dichas diferencias mediante **mutuas concesiones**." (Énfasis en
original.)  Véase además, J. Puig Brutau, *Fundamentos de
Derecho Civil*, Tomo II, Volumen II, Casa Editorial Bosch,
Barcelona, 1982, págs. 626 – 630; Véase también I. Sierra Gil
de la Cuesta, *Comentario del Código Civil,* Tomo 8, Editorial
Bosch S.A., Barcelona, 2000, págs 84-90.

Por su naturaleza jurídica compleja, el contrato de
transacción debe interpretarse de forma restrictiva por lo
que sus efectos se extienden a lo expresamente pactado por
las partes.  El Código Civil dispone normas interpretativas
concretas para las transacciones.  La norma que lo disciplina
es el Artículo 1714 del Código Civil, 31 L.P.R.A. sec. 4826,
que establece que la transacción "no comprende sino los
objetos expresados determinadamente en ella, o que, por una
inducción necesaria de sus palabras, deban reputarse
comprendidos en la misma."  Como resultado, han de entenderse
resueltas con carácter final sólo las cuestiones directamente
relacionadas con el objeto transigido, lo que presupone la
necesidad de claridad y precisión en la descripción de los
asuntos transados.  Sierra Gil de la Cuesta, *Comentario del
Código Civil,* Tomo 8, *supra*, pág. 105; *Sucn. Román v. Shelga
Corp. supra.*

El contrato de transacción puede tener lugar en
situaciones en que intervengan una pluralidad de sujetos,

bien del lado activo —-varios acreedores—- o del lado pasivo —-varios deudores—- porque exista al mismo tiempo pluralidad de deudores y acreedores. La eficacia de la transacción plantea inconvenientes doctrinales cuando consideramos cuál será el efecto de la transacción concluida entre uno de los deudores y su acreedor, respecto a los otros deudores. Precisamente, este es el asunto que hoy nos ocupa.

**B**

En materia de responsabilidad civil extracontractual, el daño causado puede ser el resultado de la negligencia de más de un causante. En estos casos, cada uno responde por la totalidad del daño causado. *Rivera Hernández v. Comtec Communication*, res. 22 de junio de 2007, 171 D.P.R. ___, 2007 T.S.P.R. 131; *Arroyo v. Hospital La Concepción*, 130 D.P.R. 596, 603 (1992); *García v. Gob. de la Capital,* 72 D.P.R. 138, 146 (1951); *Rivera v. Great Am. Indemnity Co.*, 70 D.P.R. 825, 828 (1950).

En un pleito de daños y perjuicios, la víctima puede renunciar a su reclamación con respecto a alguno de los co-causantes de su daño mediante un acuerdo de transacción. Dependiendo de lo pactado, así serán los efectos de ese acuerdo sobre el co-causante con quien se transa y los demás co-causantes que permanezcan en el pleito. *S.L.G. Szendrey v. Hospicare Inc.*, 158 D.P.R. 648, 656 (2003); *Blás Toledo v. Hospital Nuestra Señora de la Guadalupe, et al.,* res. 30 de marzo de 2006, 167 D.P.R. ___, 2006 T.S.P.R. 47. Por lo tanto, para auscultar cuáles son esos efectos es necesario

establecer primero qué fue lo que se pactó. 31 L.P.R.A. sec. 4826.

Hemos señalado en el pasado que si la víctima del daño releva de responsabilidad a uno de los co-causantes del daño, ello no supone el relevo de responsabilidad de los otros co-causantes si esto último no surge claramente del acuerdo de transacción. *Merle v. West Bend Co.,* 97 D.P.R. 403, 409 (1969); *S.L.G. Szendrey v. Hospicare Inc., supra*, pág. 655; *Blás Toledo v. Hospital Nuestra Señora de la Guadalupe, et al., supra.* Así pues, la víctima puede continuar su reclamación en contra de los demás co-causantes del daño. Con lo cual, la responsabilidad de estos co-causantes dependerá, en gran medida, del acuerdo transaccional entre la víctima y el co-causante liberado.

En el acuerdo transaccional, la víctima puede liberar a un co-causante de toda responsabilidad que pueda surgir en relación con el evento dañoso, entiéndase, que se libera de su responsabilidad tanto para con la víctima como en la relación interna entre co-causantes. Cuando esto ocurre la víctima asume la porción de responsabilidad que se le atribuya al co-causante liberado. *Szendrey v. Hospicare Inc., supra,* pág. 656-659. En estos casos, los demás co-causantes del daño no podrán recobrar del co-causante liberado cantidad alguna.

Lo anterior responde a que según este acuerdo transaccional, los demás co-causantes no tendrán disponible una acción de nivelación para recobrar cualquier suma pagada en exceso a la porción de responsabilidad que les

corresponda.[2]   La acción de nivelación persigue evitar el enriquecimiento injusto de una parte. *Szendrey v. Hospicare Inc., supra,* pág. 654; *P.R. Fuels, Inc. v. Empire Gas Co., Inc.,* 149 D.P.R. 691, 712-713 (1999); *Ramos v. Caparra Dairy*, Inc., 116 D.P.R. 60, 63-64 (1985).   Por lo tanto, los demás co-causantes no pueden quedar desprovistos de la acción de nivelación, salvo cuando no estuvieran sujetos a pagar más de lo que les corresponde según sus porciones de responsabilidad.   Así, en este contexto, los demás co-causantes no estarán sujetos a resarcir la totalidad de los daños, sino sólo la porción remanente luego de restar el monto correspondiente a la porción de responsabilidad del co-causante liberado. *Szendrey v. Hospicare Inc., supra,* pág. 658.   *Véase además*, D. Fernández Quiñones, *Análisis del Término 2002-2003: Tribunal Supremo de Puerto Rico: Responsabilidad Civil Extracontractual*, 73 Rev. Jur. U.P.R. 807, 827-830 (2004).   Dado que la cantidad que se debe pagar en virtud de la sentencia no incluye el monto correspondiente a la porción de responsabilidad del co-causante liberado, la cantidad recibida a cambio del relevo de responsabilidad no se atribuye al pago de la sentencia.

Mediante este tipo de acuerdo de transacción, se elimina la incertidumbre de lo que en su día el demandante tendrá derecho a recobrar en virtud de la porción de responsabilidad que se le atribuya al co-causante liberado.   L. R. Rivera

---

[2] Respecto a la acción de nivelación, el Artículo 1098 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3109, establece que el deudor solidario que hizo el pago sólo puede reclamar de sus codeudores la parte que a cada uno corresponda. Véase *infra*, n. 3.

Rivera, *El Contrato de Transacción, sus efectos en situaciones de solidaridad*, San Juan, Puerto Rico, Jurídica Editores, 1998, pág. 36. Dicha cantidad queda establecida en el acuerdo de transacción. Por lo tanto, el demandante sólo tendrá derecho a recibir la cantidad establecida en el acuerdo de transacción como pago del monto correspondiente a la porción de responsabilidad de ese co-causante. Así, asume el riesgo de recobrar menos de lo que en su día se determine por sentencia.

Como corolario de lo anterior, en caso de que conforme la sentencia dictada el monto correspondiente a la porción de responsabilidad del co-causante liberado sea mayor a lo recibido a cambio del relevo de responsabilidad, el demandante asume dicha merma. Por el contrario, si dicho monto es menor a lo recibido a cambio del relevo de responsabilidad, el demandante percibe la ganancia.

Por otra parte, el acuerdo transaccional se puede circunscribir a que el demandante renuncie a una acción de daños y perjuicios en contra de uno de los co-causantes, sin más. Este tipo de transacción no impide que la víctima continúe la demanda en contra de los demás co-causantes de su daño, esperando recobrar de éstos hasta la totalidad del monto correspondiente a los daños causados. *Véase, Blás Toledo v. Hospital Nuestra Señora de la Guadalupe, et al., supra*. En caso de que para satisfacer la sentencia que advenga en su día, los demás co-causantes tengan que pagar una suma en exceso a la porción de responsabilidad que les corresponda a los fines de compensar la porción de

responsabilidad del co-causante liberado, éstos tendrán disponible la correspondiente acción de nivelación. *Blás Toledo v. Hospital Nuestra Señora de la Guadalupe, et al., supra,* n. 3.

En este contexto, la cantidad recibida por el demandante en virtud del acuerdo transaccional, sí se considera un pago parcial de la sentencia que recaiga. *Blás Toledo v. Hospital Nuestra Señora de la Guadalupe, et al., supra.* ("… el tribunal de instancia sólo debe reducir del monto de la sentencia la cantidad […] correspondiente a la aludida transacción.") De lo contrario, el demandante podría recobrar la totalidad del monto de la sentencia, además de lo obtenido mediante el acuerdo transaccional sin haber asumido ningún riesgo.

Lo anterior constituiría un enriquecimiento injusto.[3] Esto, pues los demandados estarían sujetos a resarcir una suma mayor al monto correspondiente a los daños causados, lo que se traduce en un empobrecimiento. A su vez, el demandante cobraría una suma mayor al monto correspondiente a los daños sufridos y por tanto, experimentaría un enriquecimiento. Al no haber asumido ningún riesgo, sería un enriquecimiento sin causa.

---

[3] La doctrina de enriquecimiento injusto responde a los principios de equidad y justicia. *E.L.A. v. Cole Vázquez*, res. 13 de abril de 2005, 164 D.P.R. ___, 2005 T.S.P.R. 46; *Silva v. Comisión Industrial*, 91 D.P.R. 891, 898 (1965). Los requisitos básicos de esta doctrina son: 1. existencia de un enriquecimiento; 2. un correlativo empobrecimiento; 3. una conexión entre dicho empobrecimiento y enriquecimiento; 4. falta de una causa que justifique el enriquecimiento y 5. la inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa. *E.L.A. v. Cole Vázquez, supra*; *Ortiz Andujar v. E.L.A.*, 122 D.P.R. 817, 823 (1988).

A la luz del marco normativo antes expuesto, resolvemos que un demandante que suscribe un acuerdo transaccional con uno de los co-demandados y termina recibiendo en total una cantidad mayor a lo que le corresponde según la sentencia dictada a su favor, podrá percibir dicha ganancia dependiendo de lo pactado en el acuerdo transaccional. Así, siempre que en el acuerdo de transacción éste asuma la porción de responsabilidad que se le impute al co-causante liberado, por lo que asume a su vez el riesgo de recobrar menos de lo que en su día se determine por sentencia, éste podrá atribuirse la ganancia. Si por el contrario, el demandante no asume la porción de responsabilidad que se le impute al co-causante liberado y por lo tanto, tampoco asume el riesgo de recobrar menos de lo que en su día se determine por sentencia, éste sólo tendrá derecho a recobrar exclusivamente lo que le corresponda según la sentencia.

**III**

En vista de lo anterior, para resolver el caso que nos ocupa debemos establecer cuál fue el acuerdo recogido en el contrato transaccional suscrito entre US Fire y Zurich y determinar así los efectos de esta transacción en este proceso judicial.

En el acuerdo transaccional suscrito por US Fire y Zurich se estipuló, en lo pertinente, lo siguiente: 1. que Zurich emitió a favor de la AAA una póliza que cubre parte de la responsabilidad por la pérdida del helicóptero propiedad de la Policía de Puerto Rico; 2. que bajo las cláusulas del contrato de seguro, Zurich estaba obligada a reembolsarle a

su asegurada las cantidades cubiertas bajo la póliza para el pago del principal de la sentencia que favorece a US Fire; 3. que conforme a la letra de la póliza, Zurich no viene obligada a pagar intereses sobre la sentencia, sean estos pre o post sentencia; 4. que a cambio del pago de $421,000 US Fire libera a Zurich de toda responsabilidad bajo la póliza de referencia y 5. que expresamente, **Zurich reconoce el derecho de US Fire a continuar su reclamación contra la AAA y la AEE y sus demás aseguradoras hasta el pago total de lo adeudado conforme a la sentencia que le favorece.**

Surge de lo anterior que Zurich se comprometió a pagar parte del principal de la sentencia pues se estipuló que esa era la responsabilidad que le correspondía bajo la póliza emitida a favor de su asegurada, la AAA. A cambio, US Fire liberó a Zurich de toda responsabilidad **bajo la póliza.** Es decir, US Fire obtuvo $421,000 en concepto de lo que Zurich vendría obligado a pagar según lo establecido en la póliza suscrita a favor de la AAA, nada más.

En el acuerdo transaccional también se reconoce expresamente el derecho de US Fire a continuar su reclamación contra la AAA y la AEE y sus demás aseguradoras, hasta el pago total de lo adeudado conforme a la sentencia que le favorece. Por lo tanto, queda claro que mediante dicha transacción US Fire no liberó de responsabilidad a las demás partes demandadas así como tampoco limitó la responsabilidad de los demás demandados a la porción remanente luego de restar el monto correspondiente a la porción de responsabilidad de la co-demandada liberada.

Tampoco surge del acuerdo que US Fire liberara a Zurich de toda responsabilidad que pudiera surgir en relación con ese evento. Por lo tanto, no la liberó de responsabilidad en la relación interna entre co-causantes. Consecuentemente, los demás demandados conservan su derecho a nivelar.

En conclusión, según este acuerdo transaccional US Fire no asumió la responsabilidad de Zurich. El dinero recibido en virtud de dicho acuerdo no constituyó un pago por asumir la responsabilidad de esta co-demandada. Siendo así, US Fire no puede beneficiarse de este acuerdo transaccional para obtener un beneficio monetario mayor al que tiene derecho según la sentencia que le favorece. Como explicamos, este beneficio se obtiene sólo si el demandante asume la porción de responsabilidad que se atribuya al co-causante liberado y asimismo, asume el riesgo de recobrar menos de lo que la sentencia que se dicte en su día disponga.

A tenor con lo antes expuesto, US Fire sólo puede cobrar el total de lo adeudado según la sentencia que le favorece, nada más. Conforme con ello, el pago realizado en virtud del acuerdo transaccional constituye un pago parcial de la sentencia.

**IV**

Ambas partes alegan que la cantidad total a la cual tiene derecho US Fire en virtud de la sentencia dictada a su favor es $1,262,036.22. No obstante, US Fire recibió un total de $1,421,000.00. Por lo tanto, le corresponde devolver la cantidad de $158,963.78, más los intereses

devengados desde que recibió el pago de Zurich, que es el momento en que quedó satisfecha la sentencia.

En este caso, el Tribunal de Primera Instancia no precisó en su sentencia las porciones de responsabilidad atribuibles a la AEE y a la AAA. Cuando no media una determinación judicial de la porción exacta de culpa de los co-causantes o cuando el efecto dañoso de la actuación de los co-causantes no es susceptible de ser medido, procede "la imposición de responsabilidad solidaria en cuotas contributivas iguales."[4] *Sánchez Rodríguez v. López Jiménez*, 118 D.P.R. 701, 710 y n.2 (1987); *Torres Ortiz v. E.L.A.*, 136 D.P.R. 556, 567 n. 6 (1994). *Véase*, Artículo 1091 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3102. Por lo tanto, en esta etapa procesal, debemos inferir que la AEE y la AAA responden por partes iguales.[5]

US Fire recibió de Zurich, aseguradora de la AAA, sólo $421,000.00. La AEE, al ser deudora solidaria, responde no sólo por la mitad que le corresponde, sino también por la cantidad que falta para satisfacer la sentencia en su totalidad, que según las partes, asciende a $1,262,036.22. Siendo así, US Fire tenía derecho a cobrar de la AEE un total

---

[4] Ello no impide que ante la ausencia de una determinación judicial de la porción exacta de culpa de los co-causantes, los litigantes soliciten dicha determinación mediante los mecanismos procesales disponibles.

[5] Cabe señalar que en este caso, el 19 de septiembre de 2006, el foro primario dictó sentencia sumaria parcial en la que declaró con lugar una demanda contra co-parte presentada por la AEE contra la AAA, para recobrar la mitad de los intereses pagados para satisfacer la sentencia. Allí, el foro primario, interpretando la sentencia dictada el 10 de septiembre de 1998, indicó expresamente que la responsabilidad de la AEE y la AAA era por partes iguales.

de $841,036.22. No obstante, la AEE consignó un total de $1,000,000.00. Es decir, la AEE pagó $158,963.78 en exceso de lo adeudado según la sentencia. Por lo tanto, le corresponde a la AEE recibir dicha cantidad de US Fire, más los intereses devengados desde el momento en que quedó satisfecha la sentencia.

Conforme a lo anterior, se revoca la resolución del Tribunal de Apelaciones que denegó la expedición del auto de *certiorari*, y mantuvo lo resuelto por el Tribunal de Primera Instancia. Se ordena a US Fire la devolución a la AEE de $158,963.78, más los intereses devengados.

Se dictará sentencia de conformidad.


                                        Anabelle Rodríguez Rodríguez
                                               Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| US Fire Insurance Company y otros<br><br>  Demandante-Recurrido<br><br>     v.<br><br>Autoridad de Energía Eléctrica y otros<br><br>  Demandada-Peticionaria<br><br>     v.<br><br>Universal Insurance Company; Federal Insurance Company; Royal & Sun Alliance Insurance Company<br><br>  Terceros Demandados-<br>  Peticionarios | CC-2006-1060 |

SENTENCIA

San Juan, Puerto Rico, a 24 de septiembre de 2008

Por los fundamentos expuestos en la Opinión que antecede, los cuales se incorporan íntegramente a la presente Sentencia, revocamos al Tribunal de Apelaciones y se ordena a US Fire la devolución a la AEE de $158,963.78, más los intereses devengados.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta concurre en el resultado sin opinión escrita. El Juez Asociado señor Rivera Pérez está inhibido.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo