Opinión concurrente en parte y disidente en parte emitida por el
Juez Presidente Señor Hernández Denton.
Concurrimos con el acápite IV de la Opinión del Tribunal, pues el foro recurrido erró al reducir la indemnización otorgada a los esposos Sagardía-Deliz por los daños que sufrió su hijo Miguel Alfonso. Ahora bien, disentimos del resto de la Opinión del Tribunal por entender que según el contrato de transacción suscrito en el caso de autos procede que apliquemos la norma pautada en S.L.G. Szendrey v. Hospicare, Inc., 158 D.P.R. 648, 658—659 (2003) (Szendrey).
De esta forma, los demandantes absorberían la porción de la culpa que les hubiera correspondido a los demandados que liberaron, tanto en la relación externa como en la relación interna y, por ende, se reduciría de la suma concedida mediante sentencia la cantidad correspondiente al grado de negligencia de esos codemandados. A falta de una determinación específica sobre la distribución de culpas en la relación interna, entonces procede devolver el caso al Tribunal de Primera Instancia para que realice la misma o divida equitativamente la culpa entre todos los cocausantes del daño. Véanse: Art. 1091 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3102. Véanse, además: US Fire Insurance v. A.E.E., 174 D.P.R. 846 (2008); Sánchez Rodríguez v. López Jiménez, 118 D.P.R. 701, 705, esc. 2 y 710 (1987).
En la Opinión del Tribunal, sin embargo, se resuelve que los efectos de la norma que pautamos en Szendrey no aplican a este caso porque no se presentó una reclamación contra los médicos relevados. Además, se expresa que los codemandados restantes —el Dr. Miguel A. Eliza García (anestesiólogo) y el Hospital Auxilio Mutuo— no presentaron prueba sobre la res *518 ponsabilidad de esos codemandados ni sobre la distribución de la culpa entre los cocausantes de la muerte de Miguel Alfonso. Por lo tanto, se resuelve que no procede descontar de la sentencia el monto correspondiente al grado de culpa de los demandados liberados.
El principal problema con esta determinación estriba en que Szendrey prohíbe, precisamente, presentar cualquier reclamación —ya sea a través de una demanda contra coparte, una demanda contra tercero o una demanda independiente de nivelación— en contra de los codemandados liberados, cuando la intención expresada en el contrato de transacción es eximirlos de su responsabilidad en la relación interna y externa. No sería necesario reclamarle a los codemandados liberados pues, según el contrato de transacción, éstos en nada tendrían que responderle a los demandantes o a los demandados que permanezcan en el pleito.
No obstante, a cambio de ese relevo total, la parte demandante se coloca en la posición de los codemandados liberados. De esta manera, asume el riesgo de que en la determinación final de responsabilidad contra todos los cocausantes, se le impute a éstos un grado de culpa mayor al anticipado cuando se suscribió el acuerdo transaccional. Sólo de esta forma tendría sentido firmar un contrato de transacción pues, como es sabido, parte de la causa en este tipo de convenios es que se renuncie mutuamente a algo. A tales efectos, se ha expresado que
[no] es lícito afirmar que la causa se centre en el poner fin a una controversia, sino que debe complementarse necesariamente con las recíprocas concesiones.... Es necesario siempre que ambas partes sacrifiquen y concedan al mismo tiempo alguna cosa en función de la superación del litigio sobre la cosa controvertida.
En conjunto, el litigio y las recíprocas concesiones constituyen los elementos de la causa. (Enfasis suplido.) S. Tamayo Haya, El contrato de transacción, Madrid, Ed. Thomson Civitas, 2003, pág. 210, citado en López Tristani v. Maldonado, 168 D.P.R. 838, 857 (2006).
*519 De acuerdo con este principio, es inevitable cuestionar cuál es la verdadera causa del contrato de transacción que firmaron los demandantes en este caso. Si a pesar de fir-mar dicho acuerdo transaccional no enfrentarían riesgo alguno, pues como resuelve la Opinión del Tribunal pueden recobrar los daños que causaron todos los que intervinieron en su producción, tal contrato carecería de causa. Más importante aún, permitir que los demandantes cobren tanto la cuantía obtenida mediante transacción como la concedida mediante sentencia, sería improcedente. Esto, pues los demandados que no tomaron parte en el acuerdo transaccional estarían pagando el total de la sentencia y, según dicho contrato, no tendrían el derecho de presentar una acción de nivelación contra los demandados liberados.
En atención a ello, en Szendrey, supra, pág. 658, resolvimos en términos claros e imperativos que el foro de instancia “tendrá que determinar en su sentencia el monto líquido total de los daños ocasionados a la parte demandante por todos sus cocausantes y deducirá de dicho monto total aquella porción monetaria equivalente al grado de responsabilidad” del codemandado liberado. (Énfasis en el original.) Del mismo modo, para la nivelación entre los codemandados que permanezcan en el caso, “tendrá que determinar el grado de contribución de cada uno de éstos a los daños sufridos por la parte demandante, aun cuando permanecen obligados solidariamente frente a ésta por la totalidad de los daños restantes”, o sea, por la suma que resulte tras el descuento de aquella porción que corresponda al grado de culpa del codemandado liberado. íd. págs. 658-659.
La alternativa a lo anterior sería, claro está, que en una acción independiente de nivelación los demandados que no formaron parte del acuerdo transaccional —en este caso, el doctor Eliza García y el hospital— les reclamen a los demandantes por el monto que pagaron en exceso y que éstos debían asumir según el contrato de transacción. Véase Soc. *520 de Gananciales v. Soc. de Gananciales, 109 D.P.R. 279 (1979); Torres v. A.F.F., 94 D.P.R. 314 (1967).
A pesar de ello, como los litigantes en esa acción futura de nivelación ya forman parte del caso ante nuestra consideración, es innecesario aguardar porque se presente tal demanda. No hay duda de que en este caso el foro de instancia erró al no aplicar la norma de Szendrey cuando dictó su sentencia. Durante el primer día del juicio se suscitó un extenso debate sobre el alcance del contrato de transacción, sus efectos sobre los demandados liberados y sus consecuencias en cuanto a las normas de solidaridad. Tras analizar el asunto, y a pesar de negarse inicialmente a acoger el acuerdo transaccional, el foro de instancia lo aprobó. Ello luego de que los abogados de los demandantes le manifestaran al tribunal que presentarían prueba de la responsabilidad de todos los demandados, incluso de aquellos que fueron liberados como resultado del acuerdo transaccional. Véase Addendum a la Petición de Certiorari, págs. 61-62. Así, pues, el foro de instancia podría adjudicar los grados de culpa correspondientes a cada uno de los cocausantes y, por lo tanto, podría aplicar correctamente la normativa de Szendrey.
Una lectura de dicho contrato de transacción revela que las partes en este caso tenían la intención de liberar al Dr. Arsenio Comas Urrutia y a su grupo de obstetricia, tanto en la relación externa como en la relación interna:
[L]a parte demandante releva, exonera y para siempre libera a los codemandados Dr. Arsenio Comas Urrutia, Seguros Triple-S, Inc., y a la Sociedad profesional para la práctica de Ginecología Obstetrics Gynecologist & Perinatal Medicine Associates, compuesta por el Dr. Arsenio Comas, el Dr. Juan Figueroa Longo, y el Dr. Ubaldo Catasús, de todas las reclamaciones o causas de acción que surjan por cualquier motivo o por razón de cualesquiera daños o pérdida ... que la parte demandante haya sufrido o que de aquí en adelante pueda sufrir como consecuencia de los hechos de la demanda radicada en este caso o en cualquiera de sus enmiendas.
*521 A la fecha en que se suscribe el presente Acuerdo no existen acciones de coparte entre los codemandados. En la eventualidad de que después de firmarse y ejecutarse el presente acuerdo alguno de los codemandados que permanecen en el pleito procedieran a radicar alguna acción de coparte o de demanda de terceros contra todos o algunos de los codemandados aquí comparecientes, aunque cualquiera de dichas acciones sería tardía e improcedente en derecho, los demandantes se obligan previo pago de la suma transaccional de $200,000.00 a lo siguiente:
a. Le extienden un relevo total a los codemandados comparecientes en lo que respecta a cualquier reclamo de los codemandados en dicha acción de coparte.
b. [De permitirse cualquier demanda contra coparte o contra tercero,] los demandantes relevarán del pago de la partida que correspondiere, fuere la cantidad que fuere, a los [codemandados] aquí comparecientes.
En atención al lenguaje del citado contrato, y como parte de su evaluación, el foro de instancia indicó al comenzar la vista en su fondo que “los abogados de la parte demandante ... van a probar todas sus alegaciones ... en contra de partes que ni siquiera ya van a estar aquí”. Addendum a la Petición de certiorari, págs. 61-62. Ello en obvia referencia al doctor Comas y a los otros demandados liberados. Así, pues, no le correspondía a los codemandados que quedaron en el pleito presentar prueba contra aquellos que fueron liberados, ya que ante un acuerdo transaccional como el que se firmó en este caso, cualquier demanda contra coparte o contra tercero hubiese sido improcedente. Tampoco es pertinente que el doctor Eliza “renunciara” a reclamar cantidad alguna de parte de los codemandados liberados, ya que de todos modos no lo podía hacer según el contrato de transacción.
Aun cuando en los primeros días del juicio se presentó cierta prueba relacionada con las actuaciones del doctor Comas, los demandantes reevaluaron su determinación previa de pasar prueba en su contra y anunciaron que estarían retirando al perito obstetra que hábían contratado por entender que no era necesario ante el contrato de tran *522 sacción suscrito por las partes. Apéndice de la Petición de certiorari, págs. 1164-1165. Sin embargo, a esa fecha ya habíamos resuelto Szendrey mediante Opinión de 14 de febrero de 2003.
Como consecuencia de esto, opinamos que antes de dictar su sentencia —en diciembre de 2003— el foro de instancia debió requerir prueba sobre el grado de culpa correspondiente a los demandados liberados, siguiendo la norma de Szendrey. Los demandados así se lo hicieron saber al tribunal en diversas ocasiones, incluso mediante la presentación de una moción de determinaciones de hecho y conclusiones de derecho adicionales. Arm así, el Tribunal de Primera Instancia denegó dicha moción según el fundamento de que el acuerdo transaccional era confidencial. Apéndice de la Petición de certiorari, págs. 164-168. Erró al así proceder.
Por ende, concurrimos con el acápite IV de la Opinión del Tribunal que revoca la reducción de la suma concedida a los esposos Sagardía-Deliz por los daños que sufrió su hijo Miguel Alfonso. Ahora bien, disentimos de su negativa de aplicar la normativa establecida por este Tribunal en Szendrey al caso de autos.