# United States Court of Appeals
## For the First Circuit

Nos. 07-1868
     07-2005

RÍO MAR ASSOCIATES, LP, SE, ET AL.,

Defendants/Cross-Plaintiffs, Appellants,

v.

UHS OF PUERTO RICO, INC., D/B/A
HOSPITAL SAN PABLO DEL ESTE,

Cross-Defendant, Appellee,

_____

MYRELLA S. FIORENTINO,

Plaintiff, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, Senior U.S. District Judge]

Before

Boudin, Chief Judge,
Selya, Senior Circuit Judge,
and Keenan,[*]Senior District Judge.

Jennifer S. Carroll for appellants.
Gladys E. Guemarez, with whom Law Offices of Gladys E. Guemarez was on brief, for cross-defendants, appellees.
Eric A. Tulla, with whom Rivera, Tulla & Ferrer, Guillermo Ramos Luiña, Edward A. Moss, and Shook, Hardy & Bacon were on brief, for plaintiff, appellee.

---

[*]Of the Southern District of New York, sitting by designation.

April 10, 2008

**SELYA**, <u>**Senior Circuit Judge**</u>. The district court bifurcated an action but, after the first-phase trial had been completed, misinterpreted the effect of the jury's verdict. That error prompted a series of rulings which, among other things, foreclosed a second-phase trial. Because these rulings were erroneous and prejudiced substantial rights, we reverse one order, vacate another, and remand for further proceedings consistent with this opinion and with Puerto Rico law governing the allocation of damages between settling and non-settling successive tortfeasors.

## I. BACKGROUND

Edward and Myrella Fiorentino sojourned from Arizona to Puerto Rico to stay at the Westin Río Mar Beach Hotel. On December 7, 2000, while swimming in the ocean, Edward was struck by a wave which rendered him unconscious. Following his shore-side resuscitation by a group of vacationing doctors, lifeguards realized that they lacked proper equipment for stabilization. When emergency medical personnel finally arrived, they placed a supportive collar around Edward's neck and transported him to the Hospital San Pablo del Este (the Hospital).

Although a scan taken that same day indicated that a cervical vertebra had been broken, the medical staff failed to treat the fracture. In the meantime, fragments pressed on Edward's spinal cord, causing swelling and nerve damage. Myrella had him transferred to a hospital in Miami but, despite prompt surgical

-3-

intervention there, Edward emerged from his ordeal as a quadriplegic.

Invoking diversity jurisdiction, 28 U.S.C. § 1332(a)(1), the Fiorentinos filed suit in the United States District Court for the District of Puerto Rico against the hotel and the entity that owned it (collectively, the Hotel) and against the Hospital. With respect to the Hotel, the amended complaint alleged negligent failure to warn of hazardous beach conditions and negligent entrustment of beach safety to untrained and ill-equipped lifeguards. With respect to the Hospital, the amended complaint alleged, among other things, medical malpractice.

Edward died before trial for reasons unconnected with the accident. His wife, as personal representative of his estate and in her own behalf, pressed forward with the suit (accordingly, we henceforth refer to her singularly as the plaintiff). Meanwhile, the Hotel and the Hospital filed cross-claims against each other. See Fed. R. Civ. P. 13(g).

As trial approached, the Hospital settled with the plaintiff for $1,400,000, and the district court granted a motion to dismiss the amended complaint as to that defendant. The Hotel's cross-claim remained pending. The court proceeded effectively to bifurcate what remained of the action, reserving the cross-claim for a separate trial.

Before the first-phase trial commenced, the Hotel moved to compel disclosure of the release, settlement agreement, and related documents (collectively, the Release) memorializing the settlement between the plaintiff and the Hospital. The plaintiff opposed the motion. The court did not act on the matter immediately, and the first-phase trial got underway.

The trial itself showcased the plaintiff's claims against the Hotel (the Hospital did not participate). At the charge conference, the judge reiterated how he had decided to structure the proceedings, advising the Hotel that it could "repeat against the hospital" in the second-phase trial all claims "for any damages that the hospital may have caused." The judge then stated:

> Basically, what I have done in this case is . . . a bifurcation. I have tried plaintiffs' causes of action against the hotel first. Once that is over, if there is any reason to go forward with [the] cross claim against the hospital, then we'll have another jury trial, and we'll go [forward with the] cross claim against the hospital.

Later that day, the court charged the jury. Pertinently, the court instructed:

> A person who by his negligence causes physical injuries to another is also responsible for any additional injuries suffered by that person as a result of the medical services provided to treat the original injuries. Nothing precludes the person who caused the original injuries to recover from the hospital who provided the medical services those additional injuries caused by their insufficient care.

-5-

> If you find that the [Hotel] defendants . . . are responsible for Mr. Fiorentino's accident on December 7, 2000, you must also determine that they are liable for all damages sustained by him as a consequence of the medical services provided to him to treat the physical injuries suffered at the beach of the Westin Río Mar Beach Hotel . . . .

After deliberations, the jury returned a verdict in favor of the plaintiff in the amount of $1,844,000.

The district court subsequently granted the Hotel's pending motion for disclosure of the Release. When produced, the settlement accord proved to be fashioned along the lines of a Pierringer release. See Pierringer v. Hoger, 124 N.W.2d 106, 112 (Wis. 1963) (interpreting such a release as discharging the settling defendant entirely and discharging the non-settling defendant from responsibility for the settling defendant's proportionate share of liability). Such "proportionate share" releases are not uncommon. See, e.g., McDermott v. AmCLYDE, 511 U.S. 202, 205, 217 (1994); In re Exxon Valdez, 229 F.3d 790, 797-98 (9th Cir. 2000); Austin v. Raymark Indus., Inc., 841 F.2d 1184, 1188-91 (1st Cir. 1988).

The Release purported not only to free the Hospital from any and all further liability to the plaintiff but also to discharge it from liability for any associated third-party claims.

An additional provision in the Release assured the Hospital of indemnification should any such claim be pressed.[2]

Armed with the Release, the Hotel filed a flurry of post-trial motions, including a motion for a new trial, see Fed. R. Civ. P. 59(a), and a motion to alter or amend the verdict by, say, a dollar-for-dollar setoff of the settlement amount, see Fed. R. Civ. P. 59(e). The district court denied both motions. The court's rejection of the new trial motion is not seriously disputed on appeal. With respect to the Rule 59(e) motion, the court expressed a belief that the Hotel, in filing it, had misconstrued the import of the jury's verdict. The court wrote:

> During the trial, the jury was only considering [the Hotel's] participation in the event that caused plaintiff's damages. The only defendant at trial was [the Hotel]. The evidence that was presented pertained to [the Hotel's] negligence and involvement in the events leading to plaintiff's injury. The jury was instructed to consider the damages only as to [the Hotel] . . . . Therefore, this is not a situation of double recovery because the jury was only considering the damages as to [the Hotel].

---

[2]Specifically the Release stated:

Plaintiffs shall indemnify and hold harmless the settling Defendants . . . from and against all claims, damages, and losses arising out of any claim made by an entity to recover any amounts from the settling Defendants which arise out of the incident alleged in the Complaint, including any claims for medical expenses and any and all claims for subrogation.

In line with this understanding, the court entered judgment against the Hotel for the total amount of the verdict, denied its motion for a setoff, and dismissed its cross-claim. These timely appeals ensued.

## II. ANALYSIS

Our analysis is divided into three parts. We begin by addressing the district court's rulings during the proceedings that followed the first-phase trial. We then canvass the case law to determine the proper allocation of damages between settling and non-settling tortfeasors in a successive tortfeasor case governed by Puerto Rico law. Lastly, we turn to the remedy for the discerned error and furnish a roadmap for further proceedings.

### A. The Post-Trial Rulings.

In the final analysis, the Hotel's assignments of error hinge upon the contention that the district court misconstrued the legal import of the first-phase verdict — a misconception that it says tainted the post-trial rulings. The most critical of those rulings was made in connection with the Rule 59(e) motion.

Ordinarily, we review a district court's disposition of a Rule 59(e) motion for abuse of discretion. See Vasapolli v. Rostoff, 39 F.3d 27, 36 (1st Cir. 1994). But this is not the ordinary circumstance. Where, as here, the disposition of a Rule 59(e) motion depends entirely on a question of law, our review is plenary. See Pérez v. Volvo Car Corp., 247 F.3d 303, 319 (1st Cir.

-8-

2001); see also Charlesbank Equity Fund II v. Blinds to Go, Inc., 370 F.3d 151, 158 (1st Cir. 2004) ("An error of law is, of course, always an abuse of discretion."). Since the cross-claim is at bottom a legal claim like any other, its dismissal is examined under the de novo standard of review. See Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007); see also United States v. Hardage, 985 F.2d 1427, 1433 (10th Cir. 1993) (applying de novo standard to lower court's dismissal of cross-claim).

The underlying legal question is nuanced, and it is understandable why the able district judge struggled with it. We have the luxury of time and, after careful consideration of the record, we conclude that both the district court's disposition of the Rule 59(e) motion and its concomitant dismissal of the cross-claim rest upon an incorrect interpretation of the effect of the first-phase verdict. We elaborate below.

The jury instruction, quoted above, scarcely could have been more lucid in its exposition of an uncontroversial rule of Puerto Rico tort law: that tortfeasors must answer not only for the damages immediately caused by their own negligence but also for any foreseeable aggravation thereof caused by the subsequent negligence of others. See Corey Lanuza v. Medic Emerg. Specialties, Inc., 229 F. Supp. 2d 92, 100 (D.P.R. 2002) ("A person is responsible not only for those damages directly caused by his or her own negligence

-9-

but also for the aggravation of injuries brought about by the negligence of a third party in the course of providing medical treatment."); Merced v. Gobierno de la Capital, 85 D.P.R. 552, 556-57 (P.R. 1962) (same). No one claims that this instruction is an incorrect statement of law, nor is there the slightest reason to believe that the jury did not scrupulously adhere to it. In any event, jurors are presumed to follow the trial court's instructions. See Richardson v. Marsh, 481 U.S. 200, 206 (1987); United States v. Sampson, 486 F.3d 13, 39 (1st Cir. 2007).

The district court's explanation of how the instruction functioned, quoted above, was accurate. The court, however, appears to have misconceived the import of the ensuing verdict. Applying the instruction to the facts of this case, the verdict must be presumed to have encompassed all the damages caused by both the Hotel and the Hospital. But the district court seems to have construed this fact as equivalent to a finding that the Hospital bore no responsibility for any part of those damages. That is not correct.

Seeking to avoid the inevitable result of this reasoning, the appellees asseverate that the Hotel failed to interpose a timely objection to the instruction, see Fed. R. Civ. P. 51(d)(2), and that, therefore, the claim of error is forfeit. The appellees' premise is sound — no such contemporaneous objection was lodged — but the conclusion that the appellees draw is insupportable.

-10-

The Hotel has not challenged the instruction itself (indeed, as we have said, no party has identified any flaw in the instruction). The challenge here concerns the district court's interpretation of the effect of that instruction — no more and no less. That interpretation did not emerge until <u>after</u> the first-phase verdict had been returned.

In such a situation, demanding that a party object at the conclusion of the charge in order to preserve its rights would be tantamount to demanding that a party anticipate a future hermeneutic misstep on the part of the trial court. The law does not require parties to possess that degree of clairvoyance. <u>Cf.</u> <u>United States</u> v. <u>Ladd</u>, 885 F.2d 954, 961 (1st Cir. 1989) (remarking that "robes and gavels are the tools of a jurist's trade — not tea leaves or crystal balls").

In an effort to dilute the force of the district court's interpretive bevue, the appellees emphasize a number of facts (such as expert testimony that Edward's fracture was so severe that it might have rendered him a quadriplegic even if he had received the best of care thereafter) suggesting that the jury might have concluded that the Hotel was to be held responsible only for the direct consequences of its own negligence. Taken to its logical conclusion, this argument suggests that the jury might have awarded $1,844,000 even while excluding from the amount awarded any damages flowing from shortcomings in Edward's care at the Hospital.

-11-

That is not enough to render the court's error harmless. The possibility that the jury could have followed such a path, as opposed to persuasive evidence that the jury actually did so, is insufficient to overcome the Hotel's presumptive right to pursue its cross-claim and motion for setoff. See United States v. Carney, 387 F.3d 436, 449 (6th Cir. 2004) (observing that "speculation, conjecture, empty hypothesizing, creative guesswork, and wishful thinking" are insufficient to overcome presumption); Breeden v. ABF Freight Sys., Inc., 115 F.3d 749, 753-54 (10th Cir. 1997) (holding in multiple defendant tort context that presumption was not overcome by mere speculation that jury ignored specific instruction).

To say more on this point would be supererogatory. We conclude that the district court erred as a matter of law in its assessment of the effect of its own instruction and, thus, erred in its interpretation of what the first-phase verdict signified. Under the instruction as given, the award encompassed both the damages attributable to the Hotel's beachfront negligence and the aggravating damages attributable to the Hospital's alleged malpractice. Consequently, the district court erred in foreclosing further litigation; the Hotel was entitled to some process by which it could test how the plaintiff's total damages — $1,844,000 — should be allocated as between it and the Hospital. The district

court should not have denied the Rule 59(e) motion or dismissed the cross-claim without pursuing that inquiry.

## B. **Allocation of Damages**.

The Release, by its terms, purports to free the Hospital from any further obligations arising out of Edward's injuries. A question nonetheless remains as to its overall effect. The plaintiff and the Hospital cannot by contracting between themselves deny a third party rights that the third party (here, the Hotel) enjoys under the law. We must, therefore, go beyond the four corners of the Release in order to determine the rights of the parties inter sese.

Simply put, the pivotal question here concerns the allocation of damages as between settling and non-settling tortfeasors in a successive tortfeasor case. Because this is an action brought under diversity jurisdiction, the appropriate rule must be gleaned from Puerto Rico law, not federal law. See Villarini-García v. Hosp. del Maestro, 112 F.3d 5, 8 (1st Cir. 1997).

The protagonists recommend different models for the rule of decision. The appellees contend that the Hotel's right of contribution is limited to that proportion of the award (if any) that can be attributed to the Hospital's negligence. See Austin, 841 F.2d at 1190 (collecting cases adhering to this "proportionate share" view). The Hotel argues instead that there should be a

-13-

dollar-for-dollar setoff of the settlement amount ($1,400,000) against the verdict amount ($1,844,000), thus limiting its responsibility to the balance ($444,000). See, e.g., Brown v. United States, 838 F.2d 1157, 1161-62 (11th Cir. 1988) (applying dollar-for-dollar setoff paradigm); In re Piper Aircraft, 792 F. Supp. 1189, 1194 (N.D. Cal. 1992) (same). Some jurisdictions dictate this choice by statute. See, e.g., Neb. Rev. Stat. § 25-21, 185.11 (1992) (codifying "proportionate share" rule); N.Y. Gen. Oblig. § 15-108(a) (McKinney 2008) (entitling non-settling defendant to a setoff equal to the settlement amount or the settling defendant's equitable share of liability, whichever proves greater). Puerto Rico has not enacted such a statute, so our task is to make an informed prophecy as to which of these rules the Puerto Rico Supreme Court would probably choose in a successive tortfeasor situation. See Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1151 (1st Cir. 1996).

The case law is less than transparently clear. One potentially useful precedent, much touted by the Hotel, is our decision in Villarini-García. There, we interpreted Puerto Rico law as favoring a dollar-for-dollar setoff in a case concerning vicarious liability. See Villarini-García, 112 F.3d at 8. In that context, a dollar-for-dollar setoff rule makes perfect sense; after all, when one tortfeasor is vicariously liable for the actions of another, the same damages are by definition attributed to each of

-14-

the two tortfeasors and the prevention of a double recovery is a paramount concern.  See id.

Another potentially useful precedent, much touted by the appellees, is the Puerto Rico Supreme Court's decision in Szendrey v. Hospicare, 158 D.P.R. 648 (P.R. 2003).  There, the court endorsed the concept of proportionate share setoffs in a case involving joint tortfeasors, one of whom had obtained a Pierringer release prior to trial.  See id. at 657; see also Toledo v. Hosp. Nuestra Señora de la Guadalupe, 167 D.P.R. ___, ___, 2006 TSPR 47, 2006 JTS 56 at 1115-17 (P.R. 2006) (reaffirming the Szendrey approach).

None of these cases directly controls the situation at hand.  Here, we are confronted with a multiple tortfeasor scenario that does not fall precisely under either the rubric of vicarious liability or that of joint tortfeasor liability. Unlike Villarini-García, in which the defendants' liability arose from the same conduct (one was vicariously liable for the other's acts and omissions through a master-servant relationship), the Hotel and the Hospital are each alleged to have been guilty of independently tortious conduct.  And unlike Szendrey, in which each of the two joint tortfeasors directly contributed to the same harm, the harms for which the Hotel and the Hospital are allegedly responsible overlap, but they are not congruent; while the Hotel became liable for the entire bundle of harms (that is, its negligence made it

liable not only for the damages flowing immediately therefrom but also for whatever damages were caused by the Hospital's independently tortious conduct), the Hospital never became liable under any theory for the entire bundle of harms (that is, it never became liable for the pre-hospitalization damages attributable exclusively to the Hotel's antecedent negligence).

This imbalance, which results from the operation of a special tort rule dealing with the aggravation of injuries, is important. Both commentators and judges have recognized the distinctive nature of this type of situation and have labeled parties like the Hotel and the Hospital "independent" or "successive" tortfeasors, thus distinguishing them from garden-variety joint tortfeasors. See, e.g., 6 Jerome H. Nates et al., Damages in Tort Actions § 51.03[1][d] (2007); see also McInnis v. A.M.F., Inc., 765 F.2d 240, 250 n.10 (1st Cir. 1985). It is, therefore, apparent that successive tortfeasor liability is doctrinally distinct from joint tortfeasor liability.

We have considered these differences and have studied the two alternative approaches to possible setoffs. We believe that the Puerto Rico Supreme Court would be more likely to employ Szendrey's proportionate share rule in a successive tortfeasor case. Our reasons are threefold.

In the first place, the analogue to a joint tortfeasor situation is a persuasive one. Easily separable and

-16-

distinguishable tortious acts may be attributed to each tortfeasor. See generally W. Page Keeton et al., Prosser and Keeton on Torts § 52, at 352 (5th ed. 1984). Where successive tortfeasors are concerned, however, the initial tortfeasor is, under certain circumstances, accountable for tortious conduct of the later tortfeasor in order "to ensure that a victim of negligence is not left without recourse due to the inability to set apart the origin of the damages or to prove medical malpractice." Corey Lanuza, 229 F. Supp. 2d at 101 (citing Merced, 85 D.P.R. at 557-58). A Pierringer release executed with the second tortfeasor dissolves this concern and molds the successive tortfeasor situation into one strongly resembling a joint tortfeasor situation in which a Pierringer release is in play (that is, each defendant is ultimately responsible only for its proportionate share of the overall damages). See Austin, 841 F.2d at 1191; Szendrey, 158 D.P.R. at 658-59. The distinctions that exist between successive tortfeasors and tortfeasors who are linked only by principles of vicarious liability are, at one and the same time, much more stark and much less easily resolved.

Our two remaining reasons can be succinctly stated. Fairly read, Szendrey seems to us to represent the default rule under Puerto Rico law, which recognizes the settling parties' intent as controlling. See Szendrey, 158 D.P.R. at 657-58 ("This intention [to release the settling defendant from all liability] .

-17-

. . does not affect the cause of action asserted against the other codefendants . . . insofar as it was so expressly agreed.") (official translation, slip op. at 6).

Finally, Villarini-García was decided in 1997. In our view, its reasoning has been colored, informed, and to some extent limited by the later decision in Szendrey. In this regard, it is especially noteworthy that the Villarini-García court's focus on the Puerto Rico courts' "general hostility to double recovery," 112 F.3d at 8, has been blurred by the Puerto Rico Supreme Court's subsequent selection of a proportionate setoff rule for joint tortfeasor cases despite the fact that, under this rule, plaintiffs might sometimes receive more (or less) than full and fair compensation for their injuries. See Szendrey, 158 D.P.R. at 658-59; see also Toledo, 167 D.P.R. at ___, 2006 TSPR 47, 2006 JTS 56 at 1115-17 (affirming Szendrey).

These reasons lead us to conclude that in all likelihood the Puerto Rico Supreme Court would find no meaningful difference between successive tortfeasors and joint tortfeasors for the purpose of determining setoffs. Confirmation of this intuition can be found in the fact that courts elsewhere tend to treat Pierringer releases the same, whether the tortfeasors in question are joint or successive. Compare, e.g., Stueve v. Am. Honda Motors Co., 457 F. Supp. 740, 748-49 (D. Kan. 1978) (applying proportionate setoff in successive tortfeasor context, after execution of Pierringer

release), and Hansen v. Crown Controls Corp., 512 N.W.2d 509, 513 n.2, 514 (Wis. Ct. App. 1993) (similar), vacated in part on other grounds, 519 N.W.2d 346, 346 (Wis. 1994), with, e.g., Naqunst v. W. Union Tel. Co., 76 F.R.D. 631, 634-35 (D. Kan. 1977) (applying proportionate setoff in joint tortfeasor context, after execution of Pierringer release), and Johnson v. Misericordia Cmty. Hosp., 301 N.W.2d 156, 158 (Wis. 1981) (similar). Legislatures have tended to do the same. See, e.g., Iowa Code Ann. § 668.7 (West 2007) (providing for proportionate setoff of settlements without distinguishing between joint and successive tortfeasors); Ky. Rev. Stat. Ann. § 411.182 (West 2008) (similar); Neb. Rev. Stat. § 25-21, 185.11 (similar). We hold, therefore, that the proportionate share rule delineated in Szendrey applies in this case.

## C. **The Remedy**.

The appellees attempt to avert a remand by suggesting that even if the Hotel arguably may have been entitled to a proportionate setoff, it waived that entitlement by not objecting to bifurcation and not requesting a special verdict apportioning damages as among the defendants. The Hotel responds that the law of the case doctrine provides it shelter because, unless and until overruled on appeal, "a legal decision made at one stage of a criminal or civil case constitutes the law of the case throughout the pendency of the litigation." Flibotte v. Pa. Truck Lines, Inc., 131 F.3d 21, 25 (1st Cir. 1997).

-19-

The Hotel has the better of this argument. The Hospital was not represented at the first-phase trial and the district court explicitly ruled that the Hotel would be entitled to pursue its cross-claim after the conclusion of the first-phase trial.[3] The bifurcation order was well within the encincture of the district court's discretion. See, e.g., Lisa v. Fournier Marine Corp., 866 F.2d 530, 531 (1st Cir. 1989); Gonzalez-Marin v. Equitable Life Assur. Soc., 845 F.2d 1140, 1145 (1st Cir. 1988); see also Charles Alan Wright et al., Federal Practice and Procedure § 2388, at 113-19 (3d ed. 2008). Accordingly, the Hotel had no basis for objecting to the bifurcation order — let alone an obligation to object to it.

Given the circumstances that obtained, the Hotel was entitled to rely on the district court's stated intention to try the issues of relative fault among the defendants in a second-phase trial. That obviated any need either to object to the jury instructions or to lobby for a special verdict. Cf. Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997) (finding reversible error when court at start of trial ruled that exhaustion of administrative remedies was not at issue and in reliance on that ruling plaintiff presented no evidence concerning that issue, only for court to reverse its original ruling post-trial and hold that exhaustion was essential).

_____

[3]Indeed, the court told the jury as much.

The appellees have a fallback position: they ruminate, with little elaboration, that remand would be improper because Szendrey bars separate contribution suits. This musing elevates hope over reason.

The Szendrey court made no sweeping prohibition of contribution actions but, rather, restricted its holding to a specific procedural situation. See Szendrey, 158 D.P.R. at 658-59. Although the court did find a particular contribution suit barred, bifurcation was never at issue. We decline to read Szendrey so expansively as to prohibit a federal court from bifurcating a claim for contribution and trying that claim separately.[4] Accordingly, we hold that the Hotel is entitled to a trial on its cross-claim against the Hospital.

A few observations about the trial on the cross-claim may prove helpful. First, the parties have a right to trial by jury.[5] See In re N-500L Cases, 691 F.2d 15, 21 (1st Cir. 1982). Second,

_____

[4]In view of this conclusion, we have no need to decide whether a prohibition against bifurcation would be preempted by a federal court's explicit authority to bifurcate trials. See Fed. R. Civ. P. 42(b); Hydrite Chem. Co. v. Calumet Lubrics. Co., 47 F.3d 887, 890-91 (7th Cir. 1995); Moss v. Associated Transp., Inc., 344 F.2d 25-27 (6th Cir. 1965) (holding that Rule 42(b) preempts Tennessee law guaranteeing right to try all facts at the same time before one jury); see generally Hanna v. Plumer, 380 U.S. 460, 463-74 (1965) (establishing test to determine whether a given Federal Rule of Civil Procedure preempts state law).

[5]Questions as to the plaintiff's responsibility under the terms of the Release to defend and hold the Hospital harmless, see supra note 1, are beyond the scope of this opinion. Consequently, we take no view as to any such matter.

in mandating a trial to fix the proportionate shares of the Hotel and the Hospital, respectively, we do not eliminate the possibility that the Hotel may prove to be entitled to something approaching a dollar-for-dollar setoff. That depends on the jury's subsequent verdict. Third, should the Hotel's proportionate share of damages be determined to be less than $444,000 (the difference between the jury's award in the first-phase trial and the amount of the settlement negotiated by the Hospital), the Hotel would have a right to pay that lesser amount in full satisfaction of its proportionate share.

We need go no further. Although the Hotel has appealed from the denial of its motion for new trial, it has offered no developed argumentation in support of that appeal and, thus, the jury verdict must stand. The district court's other post-trial rulings, however, were premised on a fundamental misconception of the effect of that verdict. To correct the ensuing errors, we reverse the dismissal of the Hotel's cross-claim and vacate the denial of its Rule 59(e) motion. On remand, we suggest that the district court hold the latter motion (which, at bottom, requests a setoff) in abeyance pending resolution of the cross-claim.

**Affirmed in part, reversed in part, vacated in part, and remanded. Costs shall be taxed in favor of the appellants as against the cross-defendant, appellee**.

-22-