# United States Court of Appeals
## For the First Circuit

No. 14-1538

MARÍA GÓMEZ, ET AL.,

Plaintiffs, Appellants,

v.

DR. JORGE E. RODRÍGUEZ-WILSON, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Torruella, Lipez, and Thompson,
Circuit Judges.

Rafael E. García-Rodón, with whom Carlos A. Del Valle-Cruz and Juan H. Saavedra-Castro, were on brief, for appellants.
Richard Schell-Asad IV, with whom Rebeca Vélez-Gómez, were on brief, for appellee Dr. Jorge E. Rodríguez-Wilson.

April 8, 2016

**TORRUELLA**, **Circuit Judge**.  Plaintiffs-Appellants María Gómez and María Migdalia Ojeda-Morales appeal the district court's order vacating the jury award, as well as the district court's order declining attorneys' fees in their favor.  Because we find that the district court improperly vacated the jury award and because we find that Defendant-Appellee Dr. Jorge E. Rodríguez-Wilson ("Dr. Rodríguez") engaged in obstinate conduct during trial, we must vacate the district court's ruling and remand this case to the district court.

## I. Background

Mr. Enrique Ojeda-Morales ("Mr. Ojeda") injured his knee while driving and was referred to Dr. Rodríguez at Doctors' Center Hospital in San Juan, Puerto Rico.  On November 19, 2008, Dr. Rodríguez performed surgery on Mr. Ojeda's right knee.  After the surgery, Mr. Ojeda's condition did not improve and his leg began to turn purple.  Mr. Ojeda remained in Doctors' Center Hospital in San Juan, Puerto Rico, under the care of Dr. Roberto Ruiz-López ("Dr. Ruiz").  Subsequently, Mr. Ojeda was transferred to Doctors' Center Hospital in Manatí, Puerto Rico, where portions of his right leg were amputated on two separate occasions.  However, Mr. Ojeda's condition continued to deteriorate and he passed away while at Doctors' Center Hospital in Manatí.

After Mr. Ojeda's death, his widow, María Gómez, and his sister, María Migdalia Ojeda-Morales, (collectively "Appellants") filed suit against Doctors' Center Hospital San Juan, Inc.; Doctors' Center Hospital, Inc.; Dr. Rodríguez; and Dr. Ruiz alleging that Mr. Ojeda perished as a result of their negligent care.[1]

The parties entered into a confidential settlement agreement. As a result, the district court dismissed the suit without the imposition of costs or attorneys' fees.

However, Dr. Rodríguez failed to comply with the settlement agreement when he did not deposit his share with the district court. According to the terms of the settlement agreement, Dr. Rodríguez's failure to comply rendered the entire agreement null and void. Doctors' Center Hospital San Juan, Inc. and Doctors' Center Hospital, Inc., entered into a second settlement agreement with Appellants. Similarly, Dr. Ruiz also entered into a second settlement agreement with Appellants. Both settlement agreements released Doctors' Center Hospital San Juan, Inc.; Doctors' Center Hospital, Inc.; and Dr. Ruiz (collectively the "settling parties") of any and all liability. Importantly,

---

[1] Appellants named other entities related to Doctors' Center Hospital in their suit, but ultimately settled with Doctors' Center Hospital San Juan, Inc. and Doctors' Center Hospital, Inc.

-3-

the settlement agreements clarified that the releases did not apply to any non-settling co-defendants and that the agreements did not constitute an admission of liability. Further, the settlement agreements made clear that should the settling defendants be found responsible for a percentage of fault, Appellants agreed to indemnify and exonerate them. Lastly, the settlement agreements clearly severed any joint and several liability amongst the parties and stated that there may not be any "leveling" amongst the parties. Appellants received a total of $700,000 from their settlement with the settling parties.

The district court dismissed the settling parties from the case and Dr. Rodríguez remained as the sole defendant. Dr. Rodríguez proceeded to trial and a jury determined that his negligent care was the proximate cause of Mr. Ojeda's death and awarded Appellants a total of $475,000. Accordingly, the district court issued a judgment in favor of Appellants.

Dr. Rodríguez sought to alter the judgment on the ground that the jury's damages award should be offset against the settlement amounts. In other words, Dr. Rodríguez sought to offset the judgment of $475,000 against the $700,000 that Appellants received from the settling parties. The district court granted Dr. Rodríguez's request and vacated the jury award.

The district court also refused the Appellants' request for attorneys' fees due to Dr. Rodríguez's obstinate conduct, as permitted by Puerto Rico law.[2]  Notably, the district court did not provide any reasoning to support its conclusion that Dr. Rodríguez was not obstinate.  This timely appeal followed.

## II. Analysis

### A. Offset of Jury Award

Appellants posit that the district court erred when it offset the jury verdict against Dr. Rodríguez by the amount that Appellants obtained from the settling parties.  We review a district court's interpretation of state law de novo.  Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 49 (1st Cir. 2009); Villarini–García v. Hosp. del Maestro, 112 F.3d 5, 7 (1st Cir. 1997).

In Villarini–García, we found that the Supreme Court of Puerto Rico had not spoken as to whether a jury award secured against one defendant should be offset by a settlement payment made by another party, allegedly vicariously liable for the same injury.  112 F.3d at 7-8.  In the absence of controlling state

---

[2] Appellants contended that Dr. Rodríguez was obstinate when he: (1) failed to honor the original settlement agreement; (2) deprived the Appellants of their original trial date; (3) forced Appellants to engage in an unnecessary trial; (4) behaved smugly towards the court during trial; and (5) refused to accept the possibility that he acted negligently.

law, we interpreted Puerto Rico law as favoring dollar-for-dollar setoff in the vicarious liability context. Id.; see also Río Mar Assocs., LP, SE v. UHS of P.R., Inc., 522 F.3d 159, 166 (1st Cir. 2008).

Offsetting a damages award by the settlement amount is rooted in "the principle that no one should or may unjustly enrich himself by receiving double compensation for the same accident." Villarini-García, 112 F.3d at 8 (citing Robles v. Superior Court, 85 P.R.R. 640, 647 (P.R. 1962)). We have repeatedly stated that it makes sense to require an offset in those cases where both the settling and non-settling tortfeasors are liable for the plaintiff's injury. Portugués-Santana v. Rekomdiv Int'l, Inc., 725 F.3d 17, 27 (1st Cir. 2013); Río Mar Assocs., LP, SE, 522 F.3d at 165. However, we held in Río Mar that Puerto Rico law requires a proportionate offset in the joint tortfeasor or successive tortfeasor context. 522 F.3d at 167 (citing Szendrey v. Hospicare, 158 D.P.R. 648, 2003 WL 751582 (P.R.2003)).

After our decision in Villarini-García, the Supreme Court of Puerto Rico has made clear that when a plaintiff settles and releases a joint tortfeasor from liability, the remaining joint tortfeasors are not released from liability unless the settlement

-6-

agreement clearly states so.  Sagardía de Jesús v. Hosp. Auxilio Mutuo, 177 D.P.R. 484 (P.R. 2009) (citations omitted).[3]

Offset may be proper if the plaintiff liberated the settling tortfeasor from all liability and the settling tortfeasor accepted responsibility or if the court makes a determination as to the settling tortfeasor's share of responsibility.[4]  However, if the settling tortfeasor is not adjudged any share of responsibility then there may not be an offset.  Id.

In Sagardía de Jesús, the plaintiffs sued several doctors, as well as the hospital that employed them, alleging negligent care, which resulted in the death of their child.  Some of the doctors named in the suit settled with the plaintiffs.  Id. The settlement agreement made clear that the settling doctors did not accept any responsibility for the alleged damages.  Id. Because the plaintiffs subrogated themselves in the settling

---

[3]  Because the official English translation of this case does not contain internal page numbers, we cannot include pin-point citation references.

[4]  When the settling tortfeasor accepts responsibility or is adjudged a percentage of responsibility, the plaintiff subrogates himself in the settling tortfeasor's position.  Because the settling tortfeasor is liberated from all responsibility, the non-settling tortfeasors may not seek contribution against the settling tortfeasor. As a result, a proportionate setoff in which the portion of responsibility attributed to the settling tortfeasor is deducted from an award against the non-settling torfeasor is proper in order to prevent unjust enrichment.  Id. n.17 (citing Szendrey v. Hospicare, 158 D.P.R. 648 (P.R. 2003)).

doctors' position, offset would have been proper if the settling doctors were later adjudged a percentage of responsibility. Id. The trial court allowed the non-settling tortfeasors to present evidence regarding the settling tortfeasors' percentage of responsibility. Id. The non-settling defendants appear to have failed to present such evidence. Id. Nonetheless, the non-settling tortfeasors submitted a post-judgment motion asking the trial court to determine the settling tortfeasors' percentage of responsibility, which the trial court denied. Id. The Supreme Court of Puerto Rico concluded that because the trial court made no affirmative finding regarding the apportionment of fault, offset was improper.[5]

After a careful reading of Supreme Court's opinion, we understand that the Puerto Rico Supreme Court's determination hinged on the conclusion that, in failing to present evidence regarding the settling tortfeasors' degree of responsibility, the non-settling tortfeasors waived their argument as to the need to apportion responsibility. Thus, in the absence of such a determination, there could be no proportional offset.

---

[5] We note former Chief Justice Hernández Denton's vigorous dissent in which he argued that the case should be remanded to the trial court so that a finding as to the responsibility of the non-settling tortfeasors could be made. Id. (Hernández Denton, C.J., concurring in part and dissenting in part).

Here, Dr. Rodríguez was found liable for all of the plaintiffs' harm valued at $475,000.  The settling parties did not accept responsibility for the alleged tort and the jury never apportioned responsibility for plaintiffs' damages.  Had the jury determined that Dr. Rodríguez was responsible for less than 100 percent of plaintiffs' damages, and that the remainder was fairly attributable to a settling co-defendant, Dr. Rodríguez would have only had to pay the percentage of the $475,000 for which he was fairly responsible.[6]  Id.; see also Río Mar, 522 F.3d at 166.

However, Dr. Rodríguez failed to ask the district court to instruct the jury to apportion responsibility.  Nor did he ask for a proportional offset of his damages award below.  Thus, in similar fashion to the non-settling defendants in Sagardía de Jesús, Dr. Rodríguez waived his argument that he is entitled to a proportional offset.  Moreover, Dr. Rodríguez also failed to address the issue of proportional offset before this court, even after Appellants argued it in their opening brief.  As a result, any argument that he is entitled to offset has been waived.

---

[6]  However, the jury's determination that a settling co-defendant was responsible for a portion of the damages would not be binding on the co-defendant because the plaintiffs already discharged their claims against them and indemnified them against any future contribution.  See Sagardía de Jesús, 177 D.P.R. 484.

Because Sagardía de Jesús establishes that proportional offsets apply in cases such as this one, we conclude that the district court misapplied Puerto Rico law when it implemented a dollar-for-dollar offset.  Furthermore, Dr. Rodríguez waived his right to seek a proportional reduction in the damages award and no such reduction may be made in this case.

We therefore conclude that it is necessary to vacate the district court's decision and remand so that Appellants may receive the amount that the jury determined in their favor.

## B.  Obstinacy

Appellants also dispute the district court's decision to refuse a grant of attorneys' fees in light of Dr. Rodríguez's obstinate conduct.  "In a diversity case in which the substantive law of Puerto Rico supplies the basis of decision, the federal court must give effect to Rules 44.1(d) and 44.3(b) of the Puerto Rico Rules of Civil Procedure."  Dopp v. Pritzker, 38 F.3d 1239, 1252 (1st Cir. 1994).  Because these rules speak in imperatives, the imposition of attorneys' fees and prejudgment interest is obligatory once a threshold finding brings the rules into play. Id.

"[A] losing party who has been obstinate during the course of a lawsuit can be held liable for prejudgment interest (if a money judgment has eventuated) and for its adversary's

attorneys' fees." De León López v. Corporación Insular de Seguros, 931 F.2d 116, 126 (1st Cir. 1991) (internal quotations omitted); see also P.R. Laws Ann. tit. 32, App. III, Rule 44.1(d); P.R. Laws Ann. tit. 32, App. III, Rule 44.3(b).

The purpose of these rules is to penalize "a losing party that because of his stubbornness, obstinacy, rashness, and insistent frivolous attitude has forced the other party to needlessly assume the pains, costs, efforts, and inconveniences of a litigation." Fernández v. San Juan Cement Co., Inc., 18 P.R. Offic. Trans. 823, 830 (P.R. 1987) (citation omitted).

In order to determine if a party has been obstinate, we must determine whether a litigant has been "unreasonably adamant or stubbornly litigious, beyond the acceptable demands of the litigation, thereby wasting time and causing the court and the other litigants unnecessary expense and delay." De León López, 931 F.2d at 126 (citing La Playa Santa Marina, Inc. v. Chris-Craft Corp., 597 F.2d 1, 7 (1st Cir. 1979)).

We review the district court's obstinacy findings for abuse of discretion. Id. A court "abuses its discretion when a relevant factor of significant weight is overlooked," an "improper factor is accorded significant weight," or a district court "considers the appropriate mix of factors, but commits palpable error in calibrating" its decision. Dopp, 38 F.3d at 1253

-11-

(citations omitted). "Though abuse of discretion is a relatively relaxed standard of review, it is a standard nonetheless, and the court of appeals will interject itself if the trial court does not meet its measure." Id.

Examples of obstinate conduct include a defendant's: (1) denial of total liability only to later accept responsibility; (2) raising undue defenses; (3) denial of all liability when only the amount of damages sought is contested; and (4) denial of a fact that he knows to be true. Correa v. Cruisers, a Div. of KCS Intern., Inc., 298 F.3d 13, 31 (1st Cir. 2002) (citing Fernández, 18 P.R. Offic. Trans. 823, 830-31 (P.R. 1987)). In Fajardo Shopping Center, S.E. v. Sun Alliance Ins. Co. of Puerto Rico, Inc., 167 F.3d 1, 15 (1st Cir. 1999), we held that the district court's finding of obstinacy was adequately supported by the defendant's failure to timely submit names of candidates for appointment as special master, a barrage of unwarranted allegations regarding the special master's appointment, the defendant's unsubstantiated allegations regarding the special master's findings, the defendant's uncalled for allegations that the special master was unqualified, and the defendant's refusal to participate in the discovery process conducted by the special master. Moreover, "Puerto Rico courts have previously imposed obstinacy-based attorneys' fees on insurance companies that

-12-

unreasonably refuse to settle out of court claims." Id. at 15-16 (citing Morales v. Automatic Vending Service, Inc., 3 P.R. Offic. Trans. 390 (P.R. 1975)).

Notably, obstinacy is to be judged in light of the overall circumstances of the particular case. See Dopp, 38 F.3d at 1253.

Appellants contend that the district court should have found Dr. Rodríguez to be obstinate. Appellants emphasize that the parties, including Dr. Rodríguez, voluntarily entered into the initial settlement agreement, which resulted in the district court's dismissal of the suit. However, Dr. Rodríguez reneged on the settlement agreement by not depositing the amount to which he had agreed.

The record reveals that Dr. Rodríguez did renege on the settlement agreement and that Dr. Rodríguez requested an extension of time of twenty days to deposit his share of the settlement. Despite his request, Dr. Rodríguez failed to deposit his share during the twenty-day window he requested.[7] Nonetheless, the district court provided Dr. Rodríguez with additional time to

---

[7] The district court did not grant Dr. Rodríguez's motion for an extension of time. However, the district court noted that his motion for an extension of time had become moot since Dr. Rodríguez did not deposit the settlement amount within the time frame he requested in his motion.

deposit his share of the settlement amount in light of the district court's congested trial calendar. Despite the extension of time, Dr. Rodríguez again failed to deposit the settlement amount. In light of Dr. Rodríguez's repeated failures to comply with the settlement agreement, Appellants requested an expedited trial date, which the district court granted.

Subsequently, the district court set a final settlement conference in an effort to revisit the settlement. The district court ordered Dr. Rodríguez to personally appear at the settlement conference. Minutes before the settlement conference was to begin, Dr. Rodríguez e-mailed his attorney and stated that he would not attend because he had to tend to a patient in the emergency room. Importantly, Dr. Rodríguez was supposed to be present in the courtroom at the time that he e-mailed his attorney. The district court found Dr. Rodríguez's excuse to be unacceptable and noted that it would proceed to trial.

The district court concluded that Dr. Rodríguez was not obstinate during the course of litigation. However, the district court did not express any rationale for its decision. We fail to see how the district court concluded that Dr. Rodríguez was not obstinate in light of the particulars of this case. Here, Dr. Rodríguez: (1) reneged on his agreement to settle and nullified the initial settlement agreement as to all parties; (2) failed to

-14-

comply with the settlement agreement during the twenty-day extension of time he requested; (3) failed to comply with the settlement agreement during the district court's additional extension of time; and (4) failed to appear before the district court for a final settlement conference.[8]  Dr. Rodríguez's behavior stubbornly prolonged the life of this dispute, causing Appellants the inconvenience and expense of continuing to trial after reaching a settlement.  Further, Dr. Rodríguez also victimized the settling parties in this case by forcing them to continue the litigation and enter into a second settlement.

In sum, Dr. Rodríguez engaged in wholly unacceptable dilatory tactics that nullified the first settlement agreement and forced the district court to set aside the judgment dismissing the case.  Dr. Rodríguez's behavior constituted a flagrant disregard for other litigants and the court, which forced Appellants to incur additional litigation costs and proceed to trial after the case had been dismissed.  Thus, we conclude that Dr. Rodríguez was patently obstinate and find that the district court abused its discretion.

---

[8]  Appellants also allege that Dr. Rodríguez's failure to call any witnesses or settling defendants, as well as his exclusive reliance on the medical record constituted obstinate conduct.  Because Dr. Rodríguez's pre-trial conduct was so egregious that it independently supports a finding of obstinacy, we do not reach his conduct during trial.

## III. <u>Conclusion</u>

Accordingly, we vacate and remand for further proceedings consistent with this opinion. Costs are awarded to Appellants.

**<u>Vacated and Remanded</u>**.